[No. B106721. Second Dist., Div. Three. Mar. 27, 1998.]

JOEL B. FRIEDLAND et al., Plaintiffs and Appellants, v.
CITY OF LONG BEACH et al., Defendants and Respondents.

**COUNSEL**

Steven D. Kalik for Plaintiffs and Appellants.

John R. Calhoun, City Attorney, Heather A. Mahood, Deputy City Attorney, Orrick, Herrington & Sutcliffe, W. Douglas Kari and Christopher S. Ruhland for Defendants and Respondents.

## OPINION

## KITCHING, J.—

### INTRODUCTION

A validation action (Code Civ. Proc., § 860 et seq.)[1] allows a public agency to obtain a judgment that its financing commitments are valid, legal, and binding. If the public agency has complied with statutory requirements, the judgment in the validation action binds the agency and all other persons. The question in this appeal is whether a plaintiff can maintain a taxpayer suit filed after the period within which to appeal a judgment in a validation action has expired.

This appeal arises from a challenge to bond financing for the "Aquarium of the Pacific" (Aquarium), an aquarium facility being built in the Queensway Bay area of Long Beach. Plaintiffs challenge resolutions of defendant public agencies which incurred financial obligations and authorized related debt instruments to build the Aquarium. The public agencies filed a validation action, complied with statutory requirements, and obtained a final judgment affirming the legality of these resolutions. Plaintiffs did not take part in, or bring a timely challenge to, the validation action. We therefore hold that the trial court properly sustained a demurrer without leave to amend to plaintiffs' subsequent complaint, which alleged causes of action that were properly raised only during the validation action. We affirm a judgment dismissing that complaint.

The Aquarium is being constructed by Long Beach Aquarium of the Pacific (AOP), a California nonprofit public benefit corporation, and is being financed through issuance of AOP's revenue bonds in the amount of $130 million. Underwriters for the project opined that the bonds were a tax exempt obligation and proceeds would be used to build the Aquarium, which would generate revenues. However, since the bond market was not familiar with aquariums as revenue-generating projects and the Aquarium had no track record to provide security that would allow the underwriters to obtain a marketable rating for the bonds, supplemental security for the repayment of the bonds was needed. The bond financing thus required the cooperation and participation of the AOP, the City of Long Beach (City), the Board of Harbor Commissioners of the City of Long Beach (Board), and the Redevelopment Agency of the City of Long Beach (Redevelopment Agency).

[1]All further references to code sections will be to the Code of Civil Procedure unless otherwise stated.

The City and Redevelopment Agency filed and obtained a judgment pursuant to section 860 et seq. (the Validation Action). That judgment validated conclusively against all other persons (1) a lease between City and AOP, (2) a pledge by Redevelopment Agency of certain transient occupancy taxes as security for payment of debt service on bonds issued by the Aquarium as provided for in an owner participation agreement, (3) a pledge by City of City's Tidelands Operating Funds as additional security for payment of debt service on bonds issued by the Aquarium, as provided for in a City pledge agreement, and (4) an agreement by Board to subordinate and defer its rights to receive payments of transient occupancy taxes from Redevelopment Agency under a fourth amendment to third cooperation agreement.

Plaintiffs and appellants Joel B. Friedland and Marc Wilder (collectively referred to as Friedland) brought the instant action. That action, inter alia, sought a declaration that Resolution No. HD-1775 and the fourth amendment to the third cooperation agreement invalidly authorized a gift of public funds from the Harbor Revenue Funds and a use of public trust funds inconsistent with the purposes of the trust. Defendants and respondents City, Redevelopment Agency, Board, and AOP demurred on the ground that the items being challenged by Friedland were a key aspect of financing for the Aquarium and were expressly validated in the Validation Action. The trial court sustained the demurrer without leave to amend. Notice of entry of a judgment of dismissal was filed October 4, 1996. Friedland filed a timely notice of appeal.

FACTUAL AND PROCEDURAL BACKGROUND

1. *The Financing of the Aquarium*

To finance the new aquarium facility, AOP issued revenue bonds entitled "Long Beach Aquarium of the Pacific Revenue Bonds . . . , 1995 Series A," in the face amount of approximately $130 million (the Bonds). These bonds were issued pursuant to an indenture between the Aquarium and a corporate trustee (Trustee), authorized to accept trusts in the State of California. To service debt on the Bonds, AOP agreed to pay Trustee a sufficient amount of gross revenues from the Aquarium each month to enable Trustee to make the interest payments on the Bonds.

As security for payment of the debt service on the Bonds, Redevelopment Agency entered into an owner participation agreement in which it pledged certain transient occupancy taxes and agreed to transfer them to Trustee to pay the debt service in the event that revenues from the Aquarium were

insufficient. To allow Redevelopment Agency to pledge these taxes, Board approved Resolution No. HD-1775 and entered into a "Fourth Amendment to Third Cooperation Agreement" wherein Board subordinated and deferred its rights to receive payment of transient occupancy taxes from Redevelopment Agency under a third cooperation agreement.[2]

As additional security for payment of debt service on the Bonds, City entered into a "City Pledge Agreement" in which it pledged certain amounts on deposit in the Tidelands Operating Fund of City to Trustee in the event that revenues available to the Aquarium, including amounts pledged by Redevelopment Agency from transient occupancy taxes, were not sufficient to pay debt service on the Bonds.

In connection with the construction of the Aquarium, City leased AOP certain property located in City.

2. *The Validation Action*

On August 1, 1995, the Long Beach City Council adopted a resolution approving the issuance by AOP of revenue bonds not to exceed $130 million. On that same date, the city council passed a resolution approving the bond financing and authorizing the filing of a validation action pursuant to section 860 et seq. On August 2, 1995, City and Redevelopment Agency filed a complaint for validation.

On August 8, 1995, City and Redevelopment Agency filed an ex parte application for order for publication of summons. The court ordered that a summons be issued, that the summons be posted in three public places within the County of Los Angeles within seven days from the date of the order, that the summons be published in the Long Beach Press-Telegram once each week for three successive weeks, beginning not later than seven days from the date of the order, and that a copy of the summons and complaint be mailed to each person who had requested "express written notice" of the summons and complaint. The order provided that "Jurisdiction over all interested persons in [the validation] action shall be complete as of September 8, 1995 . . . ." The summons was published in the Long Beach Press-Telegram on August 9, 16, and 23, 1995, and was posted at the Long Beach City Hall, the City of Long Beach Public Library, and the Los Angeles County Courthouse. City filed documents showing compliance with the court's orders. No one filed an answer to the Validation Action and City received no inquiries.

---

[2]The third cooperation agreement concerned a loan from the Harbor Revenue Fund to Redevelopment Agency to expand the Long Beach Convention Center. The agreement provided that Redevelopment Agency, which received $30 million in loans from the Harbor Revenue Fund, would repay the fund with funds collected pursuant to the transient occupancy tax.

On September 12, 1995, City and Redevelopment Agency filed an application for entry of judgment for validation. On the same day, the court signed the judgment and it was entered.

On November 16, 1995, the bond transaction closed.

### 3. *Friedland's Action*

On April 5, 1996, Friedland (a former member of Board) filed a complaint for declaratory relief, injunction, accounting by trustees and restitution. A first amended complaint filed May 2, 1996, added Wilder as a plaintiff. The first amended complaint challenged Resolution No. HD-1775 and the Fourth amendment to Third Cooperation agreement, which were part of the financing for the Aquarium. The first amended complaint contained causes of action for declaratory relief, for an injunction, for an accounting by trustee, and for restitution.

On June 3, 1996, City, Redevelopment Agency, and Board demurred on the ground that the Validation Action expressly validated the items challenged by Friedland. As we have seen, the court sustained the demurrer without leave to amend.

## CONTENTIONS

Friedland contends:

1. The trial court erred in sustaining the demurrer without leave to amend because he has stated a taxpayer's cause of action under sections 526a and 1060;

2. The trial court abused its discretion in dismissing a taxpayer's lawsuit and allowed City et al., to receive an unconstitutional gift of public funds in violation of the California Constitution, article XVI, section 6.

This appeal, however, turns on whether the earlier Validation Action properly adjudicated the matters raised in Friedland's complaint, whether notice was properly given, and whether the judgment in the Validation Action bars this taxpayer suit.

## DISCUSSION

### 1. *Standard of appellate review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. (*Title Ins. Co.* v. *Comerica Bank—California* (1994) 27

Cal.App.4th 800, 807 [32 Cal.Rptr.2d 735]; *Buford* v. *State of California* (1980) 104 Cal.App.3d 811, 818 [164 Cal.Rptr. 264].) When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We treat the allegations as true and construe them liberally with a view to attaining substantial justice. (*Shaeffer* v. *State of California* (1970) 3 Cal.App.3d 348, 354 [83 Cal.Rptr. 347]; *King* v. *Central Bank* (1977) 18 Cal.3d 840, 843 [135 Cal.Rptr. 771, 558 P.2d 857].) In addition, other relevant matters which are properly the subject of judicial notice may be treated as having been pled. (*Marina Tenants Assn.* v. *Deauville Marina Development Co.* (1986) 181 Cal.App.3d 122, 128 [226 Cal.Rptr. 321].)

Generally, when a demurrer is sustained without leave to amend, we decide whether there is a reasonable possibility the defect can be cured by amendment. If it can, the trial court abused its discretion and we reverse; if not, there was no abuse of discretion and we affirm. (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318.)

2. *The trial court properly sustained the demurrer without leave to amend.*

a. *The purposes and nature of validation actions*

■ A validation action implements important policy considerations. "[A] central theme in the validating procedures is speedy determination of the validity of the public agency's action." (*Millbrae School Dist.* v. *Superior Court* (1989) 209 Cal.App.3d 1494, 1497 [261 Cal.Rptr. 409].) "The text of section 870 and cases which have interpreted the validation statutes have placed great importance on the need for a single dispositive final judgment." (*Committee for Responsible Planning* v. *City of Indian Wells* (1990) 225 Cal.App.3d 191, 197-198 [275 Cal.Rptr. 57].) The validating statutes should be construed so as to uphold their purpose, i.e., "the acting agency's need to settle promptly all questions about the validity of its action." (*Millbrae School Dist* v. *Superior Court, supra,* 209 Cal.App.3d at p. 1499.)

"[I]n its most common and practical application, the validating proceeding is used to secure a judicial determination that proceedings by a local government entity, such as the issuance of municipal bonds and the resolution or ordinance authorizing the bonds, are valid, legal, and binding. Assurance as to the legality of the proceedings surrounding the issuance of municipal bonds is essential before underwriters will purchase bonds for resale to the public." (Sen. Rules Com., Rep. on Sen. Bill No. 479 (1985-1986 Reg. Sess.).)

Government Code section 53511 states: "A local agency may bring an action to determine the validity of its bonds, warrants, contracts, obligations or evidences of indebtedness pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure." The "contracts" in this statute do not refer generally to all public agency contracts, but rather to contracts involving financing and financial obligations. (*Meaney* v. *Sacramento Housing & Redevelopment Agency* (1993) 13 Cal.App.4th 566, 577 [16 Cal.Rptr.2d 589].) Such contracts are frequently the subject of validation actions.

A key objective of a validation action is to limit the extent to which delay due to litigation may impair a public agency's ability to operate financially. (*Graydon* v. *Pasadena Redevelopment Agency* (1980) 104 Cal.App.3d 631, 644-645 [164 Cal.Rptr. 56].) A validation action fulfills a second important objective, which is to facilitate a public agency's financial transactions with third parties by quickly affirming their legality. "The fact that litigation may be pending or forthcoming drastically affects the marketability of public bonds[.] . . . [T]he possibility of future litigation is very likely to have a chilling effect upon potential third party lenders, thus resulting in higher interest rates or even the total denial of credit," which may impair a public agency's ability to fulfill its responsibilities. (*Walters* v. *County of Plumas* (1976) 61 Cal.App.3d 460, 468 [132 Cal.Rptr. 174].)

Section 860 states, in part, that a validation action "shall be in the nature of a proceeding in rem." Thus a validation action operates against property, as distinct from an injunction that operates against persons. (*Bernardi* v. *City Council* (1997) 54 Cal.App.4th 426, 434, fn. 8 [63 Cal.Rptr.2d 347].) As an in rem proceeding, a validation action differs from traditional actions challenging a public agency decision; its effect binds the agency and all other persons. (*Committee for Responsible Planning* v. *City of Indian Wells, supra,* 225 Cal.App.3d at p. 197.)

Section 860 authorizes a public agency to bring a validation action. It provides that "A public agency may upon the existence of any matter which under any other law is authorized to be determined pursuant to this chapter, and for 60 days thereafter, bring an action in the superior court of the county in which the principal office of the public agency is located to determine the validity of such matter." The "other law" in this case is Government Code section 53511, quoted *ante.* "The summons shall be directed to all persons interested in the matter" of the validation action. (§ 861.1.) Jurisdiction is obtained by publication of the summons pursuant to Government Code section 6063 in a newspaper of general circulation designated by the court. The agency must give any other notice ordered by the court. (§ 861.) "Any

party interested may, not later than the date specified in the summons, appear and contest the legality or validity of the matter sought to be determined." (§ 862.)

The validation judgment is conclusive. Section 870, subdivision (a) states: "The judgment, if no appeal is taken, or if taken and the judgment is affirmed, shall, notwithstanding any other provision of law including, without limitation, Sections 473 and 473.5, thereupon become and thereafter be forever binding and conclusive, as to all matters therein adjudicated or which at that time could have been adjudicated, against the agency and against all other persons, and the judgment shall permanently enjoin the institution by any person of any action or proceeding raising any issue as to which the judgment is binding and conclusive."

The question therefore becomes whether Friedland is attempting to litigate matters which were, or which could have been, previously adjudicated in the Validation Action.

b. *The Validation Action covered Board's Resolution No. HD-1775 and the Fourth Amendment to Third Cooperation Agreement.*

 The Validation Action was brought to determine the validity of (1) a lease between City and AOP, (2) a pledge by Redevelopment Agency of certain transient occupancy taxes as security for the payment of debt service on bonds issued by the Aquarium as provided for in an owner participation agreement, (3) a pledge by City of City's Tidelands Operating Funds as additional security for the payment of debt service on bonds issued by the Aquarium, as provided for in a City pledge agreement, and (4) an agreement by Board to subordinate and defer its rights to receive payments of transient occupancy taxes from Redevelopment Agency under a furth amendment to third cooperation agreement. The complaint alleged that Board adopted resolution No. HD-1775 which authorized adoption of the fourth amendment to third cooperation agreement.

The Validation Action sought a judgment that the lease, the owner participation agreement, the City pledge agreement and the cooperation agreement amendment, and resolutions of City, Redevelopment Agency and Board authorizing execution of those agreements were valid and binding. The validation complaint described and attached copies of the Fourth Amendment to Third Cooperation Agreement and Resolution No. HD-1775.

After no one came forward to contest the Validation Action, an application for entry of judgment was filed with the court. This application included

a summary of the case, a memorandum of points and authorities, and copies of the Fourth Amendment to Third Cooperation Agreement and Resolution No. HD-1775. The memorandum of points of authorities specifically addressed some of the legal issues regarding the financing and stated: "A number of different transactions are needed to carry out the Project. Although plaintiffs believe that all of these are legally proper, in some instances the law is not clear, or contrary arguments could conceivably be advanced." The court was advised that arguments could be made that certain aspects of the financing violated the trust purposes of the public trust funds involved or the prohibition of the gift of public funds under article XVI, section 6 of the California Constitution.

The court's judgment held as follows: "The provisions of the City's Resolution, the Agency's Resolution, and the Board's Resolution [No. HD-1775] are valid and binding and . . . the Lease, the Owner Participation Agreement, the City Pledge Agreement, and the Cooperation Agreement Amendment [fourth amendment to third cooperation agreement], upon execution, create valid and binding obligations of the City or the Agency, as the case may be, in accordance with their respective terms."

On September 12, 1995, a notice of entry of judgment was filed. No appeal was filed within the 30-day period required by section 870, subdivision (b).

 c. *The Fourth Amendment to Third Cooperation Agreement and Resolution No. HD-1775 were appropriate subjects of Validation Action.*

The Fourth Amendment to Third Cooperation Agreement and Resolution No. HD-1775 were integral components of financing for the Aquarium. They constituted pledges of funds from various sources to insure repayment of AOP bonds in the event that Aquarium revenues could not repay that debt. Thus they were proper subjects of the Validation Action. (See *City of Ontario* v. *Superior Court* (1970) 2 Cal.3d 335, 343 [85 Cal.Rptr. 149, 466 P.2d 693]; *Meaney* v. *Sacramento Housing & Redevelopment Agency, supra,* 13 Cal.App.4th at p. 577 [joint financing agreements between local agencies are contracts that may be validated]; and *Graydon* v. *Pasadena Redevelopment Agency, supra,* 104 Cal.App.3d at p. 645 [a contract for construction of a subterranean garage was "an integral part of the whole method of financing the public costs associated with [a] retail center.")

 d. *The validity of the Fourth Amendment to Third Cooperation Agreement and Resolution No. HD-1775 may not now be relitigated.*

Section 870, subdivision (a) provides that validation actions are "forever binding and conclusive." Friedland asserts that he is not attempting to set

aside the Validation Action. He argues that he may raise a constitutional challenge to a public agency's act at any time. He also argues that the judgment in the Validation Action does not bind him because he has stated a taxpayer's cause of action pursuant to sections 526a (equity relief) and 1060 (declaratory relief). Friedland alleges that section 526a allows him to bring an equity taxpayer action when public officials commit illegal expenditures or waste public funds. Friedland argues that City is using state credit and funds as security for issuing bonds to finance a strictly municipal aquarium project being run through a private nonprofit California corporation. He asserts he has not been given his day in court concerning the granting or denial of any equitable relief based on the merits of his case.

We note that in briefing legal issues in the Validation Action, City raised the constitutional issue Friedland now relies on and advised the trial court that an argument could be made that the pledge of transit occupancy taxes and of amounts on deposit in the Tidelands Operating Fund were unconstitutional gifts of funds in violation of article XVI, section 6 of the California Constitution. Even if City had not placed this constitutional issue before the trial court, the judgment in the Validation Action would nonetheless have been conclusive. Section 870, subdivision (a) states in part that if a judgment in a validation action is affirmed on appeal, or if no appeal is taken, the judgment "shall, notwithstanding any other provision of law . . . thereupon become and thereafter be forever binding and conclusive as to all matters therein adjudicated *or which at that time could have been adjudicated*[.]" (Italics added.)

■ As noted, Friedland argues that he may raise a constitutional challenge to a public agency's act at any time. That is not true; "even a constitutional right is subject to reasonable statutory periods of limitation within which to commence an action for its vindication." (*Timberidge Enterprises, Inc.* v. *City of Santa Rosa* (1978) 86 Cal.App.3d 873, 886 [150 Cal.Rptr. 606]; see also *Rider* v. *County of San Diego* (1991) 1 Cal.4th 1, 13 [2 Cal.Rptr.2d 490, 820 P.2d 1000]; *Rand* v. *Bossen* (1945) 27 Cal.2d 61, 65-67 [162 P.2d 457]; and *Miller* v. *Board of Medical Quality Assurance* (1987) 193 Cal.App.3d 1371, 1377 [238 Cal.Rptr. 915].) "[T]he assertion of a constitutional right is subject to a reasonable statute of limitations unless a constitutional provision provides to the contrary." (*Ibid.*) What constitutes a reasonable time is a question ordinarily left to the Legislature, whose decision a court will not overrule except where palpable error has been committed. (*Rand, supra*, at p. 66.) ■ Given the policies underlying the validation statutes that we have described, we find no such palpable error. We hold that as to matters which have been or which could have been adjudicated in a validation action, such matters—including constitutional

challenges—must be raised within the statutory limitations period in section 860 et seq. or they are waived.

Friedland relies primarily on the case of *City of Ontario* v. *Superior Court, supra,* 2 Cal.3d 335, for his argument that validation actions under section 860 et seq. do not preclude equity actions to enjoin illegal public expenditures. *City of Ontario,* however, does not support his position. In that case, a city formed a private nonprofit corporation to issue bonds of $25 million, without voter approval, to finance the purchase of a site and the construction of an automobile racing stadium. The plan would have given a developer a contract, without competitive bidding, to build the stadium at a cost of $12.5 million. Then the city planned to lease the stadium to a private business for operation as a private venture. Plaintiffs filed a taxpayer's suit alleging that the city's conduct violated various statutes as well as constitutional prohibitions against making gifts of public funds or lending public credit for private purposes. (2 Cal.3d at pp. 338-339.)

Plaintiffs sought an injunction, restitution, and a declaratory judgment. On the 64th day after the complaint was filed, the city moved to dismiss the action on the ground that the summons did not conform to the special requirements of sections 861 to 863 which provide that "the summons be directed in addition to 'all persons interested in the matter' (§ 861.1), and be published in a newspaper of general circulation (§ 861); if publication is not completed within 60 days, the action must be dismissed 'unless good cause for such failure is shown' (§ 863)." (*City of Ontario,* v. *Superior Court, supra,* 2 Cal.3d at p. 339.) The trial court "impliedly" found that sections 860-870 governed the action, but expressly found that plaintiffs had shown good cause for their failure to comply with the notice provisions of sections 860 and 861.1. (2 Cal.3d at p. 339.) The city sought a writ of prohibition seeking to restrain the trial court from taking further proceedings in the taxpayers' suit.

The Supreme Court discussed the history of sections 860 to 870. The statutes were first enacted in 1961 to bring uniformity to numerous statutes "authorizing actions by cities, counties, and public agencies to establish the validity of their bonds or assessments or the legality of their existence, and providing special procedures for appeals in such cases." (*City of Ontario* v. *Superior Court, supra,* 2 Cal.3d at p. 340.) The Judicial Council explained, " 'To bring these proceedings into conformity with the Rules on Appeal, to avoid constitutional questions, including those relating to the adequacy of the notice given, and to provide a simple, uniform procedure, the Judicial Council recommends that general legislation be enacted for determining the legality or validity of these matters, which will include the general provisions found in most of the existing statutes.' " (*Ibid.*) In 1963, Government

Code section 53510 extended the validation action to any " 'county, city, city and county, public district or any public or municipal corporation, public agency or public authority.' " (2 Cal.3d at p. 341.) Government Code section 53511 extended the validation proceeding to " 'an action to determine the validity of [the agency's] bonds, warrants, contracts, obligations or evidences of indebtedness.' " (2 Cal.3d at p. 341.)

In *City of Ontario*, the Supreme Court noted its concern that a plaintiff only had 60 days to bring a validation action and that the public entity did not have to bring its own validation action because it could merely wait for the 60 days to run. (2 Cal.3d at pp. 341-342.) In addition, the court stated that "[t]o the extent that plaintiffs in the present case prayed for a declaration invalidating the entire speedway scheme, including the bonds and accompanying agreements, the provisions of chapter 9 [sections 860 et seq.] were arguably applicable. But plaintiffs also sought two other kinds of relief: (1) an injunction restraining the parties from spending any funds or doing any other acts in furtherance of the speedway project, and (2) an order compelling the parties to make restitution to City of all money unlawfully paid out in connection with the project." (*Id.* at p. 344.) The court concluded, "To the extent plaintiffs ask for injunctive relief unrelated to the performance of the terms of the Motor Stadium Agreement, no reason appears to deny them their normal and long-standing taxpayers' remedy." (*Ibid.*) Although it was a "complex and debatable" issue whether chapter 9 (§ 860 et seq.) applied to the case, assuming it did, the Supreme Court held that plaintiff had shown sufficient good cause to be relieved of the 60-day filing requirements of section 863. (2 Cal.3d at p. 346.)

We find that *City of Ontario* has no application to this appeal. The plaintiffs in *City of Ontario* raised issues beyond the areas that could be validated pursuant to section 860 et seq. That is, they attacked expenditures that went beyond, and were not authorized by, the Motor Stadium Agreement, its bonds, and accompanying agreements. As to those matters "unrelated to the performance of the terms of the Motor Stadium Agreement," *City of Ontario* allowed a taxpayer's suit seeking injunctive relief and restitution to proceed. (*City of Ontario* v. *Superior Court, supra*, 2 Cal.3d at pp. 344-345.) By negative implication, however, plaintiffs' failure to bring a validation action addressing matters which were related to the performance of the Motor Stadium Agreement placed those matters beyond challenge by a traditional taxpayer's suit.

As stated, in *City of Ontario*, some of the matters sought to be enjoined came within the Motor Stadium Agreement. Other matters sought to be enjoined went beyond the requirements of that agreement. Specifically,

those matters were "City's alleged intention to make all necessary off-site improvements at its own cost and to continue paying salaries and expenses of municipal employees involved in the venture." (*City of Ontario* v. *Superior Court, supra*, 2 Cal.3d at p. 344, fn. 4.) In this appeal, by contrast, all matters alleged in Friedland's second cause of action for injunctive relief concern the Board's resolution to subordinate a $30 million loan due and payable to the Harbor Revenue Fund, and the Board's enactment of Resolution No. HD-1775 pledging a guarantee from Harbor income. These matters were precisely those which should have been litigated in the Validation Action. Stated another way, the cause of action for injunctive relief alleges no matters that went beyond the requirements of the challenged resolutions. Therefore unlike *City of Ontario*, because Friedland has not sought injunctive relief unrelated to the performance of the terms of the challenged resolutions, a section 526a remedy should be denied.

The same is true of the Friedland complaint's fourth cause of action for restitution, whose two paragraphs merely allege that the Harbor Revenue Fund is entitled to restitution of all revenues defendants improperly subordinated, lent, pledged or expended in enacting the challenged resolutions. In *City of Ontario*, the complaint claimed restitution of public funds paid out for unlawful purposes that went beyond the terms of the Motor Stadium Agreement. Particularly, plaintiffs alleged that the city made two unauthorized $5,000 loans before entering into that agreement, and reimbursed a private contractor $250,000 for its worthless options. (*City of Ontario* v. *Superior Court, supra*, 2 Cal.3d at p. 345.) *City of Ontario* stated: "[n]othing in the general validating statute contemplates such an in personam cause of action for repayment of public money unlawfully expended[.]" (*Ibid.*) In this appeal, by contrast, the restitution cause of action alleges no illegal payments of public funds outside of or in addition to revenues defendants were alleged to have improperly "subordinated, lent, pledged, or expended" in enacting the resolutions. Friedland's complaint has alleged no in personam cause of action for restitution, nor any remedy that would supplement the matters litigated in the Validation Action. Therefore Friedland's restitution cause of action is barred.

Thus by contrast to *City of Ontario*, Friedland's claims wholly concern matters which were expressly and properly validated. In addition, we reject the interpretation of *City of Ontario* proposed by Friedland. *City of Ontario* does not stand for the proposition that merely calling his claims "equitable" enables Friedland to attack the Validation Action at issue in this case, and the validation procedure of section 860 et seq. *City of Ontario* allows a traditional taxpayer action to proceed only as to those matters not within the jurisdiction of a validation action. As to those matters which were or which

could have been adjudicated in the validation action, the judgment is "forever binding and conclusive," and the judgment "*shall* permanently enjoin the institution by *any* person of *any* action or proceeding raising *any* issue as to which the judgment is binding and conclusive." (§ 870, subd. (a), italics added.) In light of such mandatory and categorical statutory language, we conclude that *City of Ontario* is limited to its unique facts and conclude that Friedland's taxpayer suit is barred.

> e. *Friedland never requested personal notice of any litigation regarding Resolution No. HD-1775.*

Friedland argues that he requested notice of any litigation regarding Resolution No. HD-1775. However, a review of the record indicates that Friedland's remarks regarding Resolution No. HD-1775 to Board were as follows: "Passing this item will likely result in a taxpayer's lawsuit with probable individual responsibility. . . . Neither, have I lost my citizenship in Long Beach. If this resolution is passed, you can depend on me to represent this Port in a manner I see fit. If government by litigation is necessary . . . so be it." First, we do not find Friedland's quoted remarks as constituting a request for personal notice of litigation. Those remarks, moreover, can be interpreted as Friedland's declaration of his intention to assert his right, pursuant to section 863, to bring a validation action himself which would challenge the resolution.

Second, *Graydon* v. *Pasadena Redevelopment Agency, supra,* 104 Cal.App.3d at page 646, found that by attending a public agency meeting during which a resolution was passed, a party was thereby placed on notice of the authorization. *Graydon* held that given such actual notice, the public agency was not estopped from asserting the bar of the 60-day limitation in the validation statutes. We similarly find that Friedland had actual knowledge of the enactment of the resolution, and no conduct by City and Redevelopment Agency estops them from relying on the 60-day limitation period in the validation statutes.

Third, we observe that the validation statutes, consistent with the statement in section 860 that a validation action is an in rem proceeding, make no provision for personal notice unless the court finds other means of notice to be "reasonably practicable" and orders notice be given "by mail or other means[.]" (§ 861.) The court made no such order in this case.

Fourth, the validation statutes give the public agency the right to bring a validation action, and if it does not do so, "any interested person" may bring

such an action. There is, however, a third alternative. Section 869 states that an interested person *must* bring such an action within the statutory time limits or be forever barred from contesting the validity of the agency's action in court, the public agency is not so limited. The practical consequence of the statute is that an agency may indirectly but effectively validate its action, as against any other "interested party," by doing nothing. (*City of Ontario* v. *Superior Court, supra*, 2 Cal.3d at pp. 341-342.)

The validation statutes thus seem to allow a public agency to validate its resolution by doing nothing and giving no notice to anyone. We call attention to this third alternative because it is the one that City and Board did not adopt. Instead these public agencies chose the more responsible first alternative of filing their Validation Action. In essence, Friedland requests this court to reopen issues adjudicated in that Validation Action to renewed litigation because the public agencies did not give him personal notice, even though no statute or court order required them to do so. For this court to grant Friedland's request would, in our view, discourage public agencies from employing the validation statutes and encourage them to validate their enactments by the safer, less public means of inaction. The validation statutes serve two purposes: They subject the public agency's enactments to judicial review and they allow public participation in that proceeding. Thus the validation statutes promote the legitimacy of a public agency's enact-ment. The better public policy is to encourage public agencies to use them. In this appeal, affirming the finality of the judgment in the Validation Action supports that public policy.

## CONCLUSION

This case shows why validation statutes exist. Defendant public agencies timely sought judicial review of the legal validity of the financing resolu-tions they had enacted. The public agencies followed statutory procedures and obtained a judgment, which was not appealed. Then Friedland's com-plaint appeared, alleging matters casting a legal cloud over the financing resolutions, thereby reducing the marketability of financial instruments cre-ated pursuant to those resolutions and impairing the ability of the public agencies to act. The Legislature enacted the validation statutes to address this very problem. This appeal provides no basis for departing from the scheme set forth by the Legislature and complied with by defendant public agencies. We therefore affirm the sustaining of the demurrer without leave to amend.

## Disposition

The judgment is affirmed. Costs are awarded to respondents.

Klein, P. J., and Croskey, J., concurred.