Filed 5/29/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JAMES D. MCGEE, | B298122 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. YC068686) |
| v. | |
| TORRANCE UNIFIED SCHOOL DISTRICT et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Michael P. Vicencia, Judge.  Affirmed.

Carlin Law Group, and Kevin R. Carlin for Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, Martin A. Hom and Jennifer D. Cantrell, for Defendant and Respondent Torrance Unified School District.

Finch, Thornton & Baird, Jason R. Thornton and Daniel P. Scholz for Defendant and Respondent Balfour Beatty Construction.

_____

This appeal is the latest in a series of cases challenging the legality of lease-leaseback agreements used by school districts for construction and modernization projects. (See *California Taxpayers Action Network v. Taber Construction, Inc.* (2017) 12 Cal.App.5th 115, 122 (*Taber*).) Authorized by Education Code section 17406, lease-leaseback agreements are used to "contract[] for construction or improvement of school facilities. Under a lease-leaseback agreement, the school district leases its own real property to a contractor for a nominal amount, and the contractor agrees to construct school facilities or improve existing facilities on the property and lease the property and improvements back to the school district. At the end of the lease-leaseback agreement, title to the construction project vests in the school district." (*Taber, supra,* at p. 122.)

Starting in 2013, taxpayer James D. McGee filed a series of three complaints to challenge lease-leaseback agreements between the Torrance Unified School District (the District) and Balfour Beatty Construction (Balfour) for several schools in the district. For the latter two complaints, the California Taxpayers Action Network joined him as plaintiff (together referred to as McGee). Labeling the complaints as reverse validation actions under Code of Civil Procedure section 860 et seq.,[1] McGee alleged a host of claims to invalidate the agreements. After two previous appeals, McGee's complaints have been narrowed to his causes of action for conflict of interest. (*McGee v. Torrance Unified School District* (Jan. 23, 2015, B252570) [nonpub. opn.] (*McGee I*); *McGee*

---

[1]     All undesignated statutory citations refer to the Code of Civil Procedure.

*v. Balfour Beatty Construction, LLC* (2016) 247 Cal.App.4th 235 (*McGee II*).)

The trial court entered judgment dismissing the remaining conflict of interest claims because the challenged projects had all been completed, which it held rendered the reverse validation action moot. (See *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1579 (*Wilson*).) McGee argues this was wrong because the lease-leaseback agreements were not subject to validation; his conflict of interest claims were in personam claims separate from his in rem reverse validation claims; and the court could have ordered disgorgement as a remedy even though the projects have been finished.

We reject his contentions. The lease-leaseback agreements were subject to validation, and his conflict of interest claims *necessarily* challenge the validity of the agreements, regardless of label or remedy. Allowing his claims to proceed long after the projects have been finished would undermine the strong policy of promptly resolving the validity of public agency actions. Because the projects were completed, his claims are moot. We affirm the judgment of dismissal.

## BACKGROUND

Between 2012 and 2015, the District and Balfour entered a series of lease-leaseback agreements for construction projects through Torrance Unified School District Obligation Bond Measure Y and Measure Z. Starting in 2013, McGee filed three complaints challenging them.

The first lawsuit challenged the lease-leaseback agreements for projects at Hickory Elementary School, Madrona Middle School, and North High School. The trial court sustained demurrers to the complaint, and on appeal, we affirmed dismissal

of all claims except conflict of interest. We held that claim was sufficiently pled and remanded it to the trial court. (*McGee I,* B252570, 2015 WL 301918, at pp. *1, *6.)

The second lawsuit challenged lease-leaseback agreements for projects at Tower Elementary School and Riviera Elementary School. Again, the trial court sustained demurrers, and again we affirmed except for the conflict of interest claim. (*McGee II, supra,* 247 Cal.App.4th at pp. 246–250.) We held McGee had standing to bring his conflict of interest claim pursuant to Government Code section 1090 and the claim was sufficiently pled. (*McGee II, supra,* at pp. 246–250.)

The third lawsuit challenged lease-leaseback agreements for projects at Torrance High School, Edison Elementary School, and Yukon Elementary School. The operative complaint contained a single cause of action for conflict of interest.[2]

McGee alleged each complaint was "brought in this court as a special *in rem* proceeding" to declare the challenged agreements void and invalid. Each complaint's prayer for relief sought a declaration the action was properly brought pursuant to the validation statutes for "judicial invalidation" of the lease-leaseback agreements. The complaints also sought declarations each agreement was void and invalid and requested disgorgement of all money paid to Balfour.

McGee's conflict of interest claims essentially alleged Balfour "had a conflict of interest based on its professional program management, construction management, and preconstruction services to the District. Plaintiffs allege Balfour

---

[2] The agreements for the Edison and Yukon schools were rescinded in 2015, so they are no longer at issue.

provided preconstruction services including budgeting, development of plans and specifications and that these services 'filled the roles and positions of officers, employees and agents' of the District." (*McGee II, supra,* 247 Cal.App.4th at p. 246.)

The trial court consolidated the cases and held a bench trial limited to the mootness issue. The court heard testimony that all the projects had been completed. Because that was the only fact necessary to decide mootness, the court declined to admit stipulated exhibits offered by McGee. The court found McGee's case was an "in rem reverse validation action" filed pursuant to section 860 et seq. that was rendered moot by the completion of the challenged projects. It entered judgment of dismissal.

## DISCUSSION

"A case is considered moot when 'the question addressed was at one time a live issue in the case,' but has been deprived of life 'because of events occurring after the judicial process was initiated.' [Citation.] Because ' "the duty of . . . every . . . judicial tribunal . . . is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or . . . to declare principles or rules of law which cannot affect the matter in issue in the case before it[,] [i]t necessarily follows that when . . . an event occurs which renders it impossible for [the] court, if it should decide the case in favor of plaintiff, to grant him any effectual relief whatever, the court will not proceed to formal judgment. . . ." [Citations.]' " (*Wilson, supra,* 191 Cal.App.4th at p. 1574.) The pivotal question in determining mootness is "whether the court can grant the plaintiff any effectual relief." (*Ibid.*) We review the issue de novo when, as here, the facts are not disputed. (*K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 174.)

5

Section 860 enables a public agency to commence an action to validate "any matter which under any law is authorized to be determined pursuant to this chapter, and for 60 days thereafter." If the agency does not bring a validation action, "any interested person may bring an action within the time and in the court specified by Section 860 to determine the validity of such matter." (§ 863.) A case brought by an interested person is frequently called a "reverse validation" action. (*California Commerce Casino, Inc. v. Schwarzenegger* (2007) 146 Cal.App.4th 1406, 1420, fn. 12 (*Commerce Casino*).)

By statute, a validation action "shall be in the nature of a proceeding in rem." (§ 860.) That means "a validation action operates against the property, as distinct from an injunction that operates against persons. [Citation.] As an in rem proceeding, a validation action differs from traditional actions challenging a public agency decision; its effect binds the agency and all other persons." (*Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 843 (*Friedland*).)

An agency need not bring a validation action to validate a decision, however. Instead, " 'an agency may indirectly but effectively "validate" its action *by doing nothing to validate it*; unless an "interested person" brings an action of his own under section 863 within the 60-day period, the agency's action will become immune from attack whether it was legally valid or not.' [Citations.] As to matters 'which have been or which could have been adjudicated in a validation action, such matters . . . must be raised within the statutory limitations period in section 860 et seq. or they are waived.' " (*Commerce Casino, supra,* 146 Cal.App.4th at p. 1420; see § 870, subd. (a).)

"A key objective of a validation action is to limit the extent to which delay due to litigation may impair a public agency's ability to operate financially." (*Friedland, supra,* 62 Cal.App.4th at p. 843.)  To that end, the validation statutes enable a " ' "speedy determination of the validity of the public agency's action . . . plac[ing] great importance on the need for a single dispositive final judgment." [Citation.]  The validating statutes should be construed so as to uphold their purpose, i.e., "the acting agency's need to settle promptly all questions about the validity of its action." [Citation.]' " (*Commerce Casino, supra,* 146 Cal.App.4th at pp. 1420–1421.)  They "fulfill the important objective of 'facilitat[ing] a public agency's financial transactions with third parties by quickly affirming their legality.' [Citation.] In particular, ' "[t]he fact that litigation may be pending or forthcoming drastically affects the marketability of public bonds[.]" ' " (*Id.* at p. 1421; see *Friedland, supra,* at p. 843.)

Given the public interest in quickly resolving the legality of agency decisions, "California law has long recognized that the completion of a public works project moots challenges to the validity of the contracts under which the project was carried out." (*Wilson, supra,* 191 Cal.App.4th at p. 1575.)  Thus, a reverse validation action "may well become moot if the challenged redevelopment project is allowed to proceed during the pendency of the action." (*Id.* at p. 1579.)

In *Wilson*, the court dismissed a reverse validation action attacking a project and the resolutions authorizing it because the project had been completed before final judgment. (*Wilson, supra,* 191 Cal.App.4th at pp. 1575–1576.)  The case had been pending for five years without explanation, which ran counter to the intent of "[v]alidation actions . . . to settle promptly all

7

questions about the validity of an agency's action." (*Id.* at p. 1580.)  The delay was partly attributable to the plaintiff, which did not try to stop the project during the lawsuit:  " 'Since [the plaintiff] made no effort to seek preliminary injunctive relief or a stay order in order to preserve the status quo, [it] is not in any position to complain of the very change in circumstances that [it] might have prevented by seeking such relief.' "  (*Id.* at p. 1581.)

As in *Wilson*, McGee's reverse validation action was rendered moot by the completion of the challenged projects. McGee filed his first lawsuit as far back as 2013, and the trial court did not dismiss the cases until 2019.  During those six years, McGee did nothing to stop the projects from moving forward while the validity of the lease-leaseback agreements was litigated.  He tries to explain that choice by claiming he did not want to "impair District's ability to operate" and he had an "adequate remedy at law" through disgorgement.  Even if true, that does not change the fact that the projects were completed. As *Wilson* recognized, this years-long delay destroyed the very purpose behind the validation statutes—"to settle *promptly* all questions about the validity of an agency's action."  (*Wilson, supra,* 191 Cal.App.4th at p. 1580, italics added.)  Having sought no stay or injunction, he is in no position " 'to complain of the very change in circumstances that [he] might have prevented by seeking such relief.' "  (*Id.* at p. 1581.)

McGee does not seriously dispute the holding in *Wilson* that a reverse validation action becomes moot if the challenged project is completed.  Instead, he argues his conflict of interest claims fall outside *Wilson* because they were not subject to the validation statutes in a number of ways.  His arguments are unpersuasive.

First and most fundamentally, McGee contends the lease-leaseback agreements themselves are not subject to validation. The validation statutes apply "when 'any other law' authorizes their application." (*Golden Gate Hill Development Co. v. County of Alameda* (2015) 242 Cal.App.4th 760, 765–766.) In determining whether his claims "fall[] within the boundaries of a particular legislative declaration that the validation statutes apply, we assess whether ' "[t]he gravamen of a complaint and the nature of the right sued upon, rather than the form of the action or relief demanded . . . " ' falls within the language of the declaration." (*Santa Clarita Organization for Planning & the Environment v. Abercrombie* (2015) 240 Cal.App.4th 300, 308 (*Abercrombie*); see *McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1165 (*McLeod*).)

Here, the applicable law is Government Code section 53511, which declares the validation statutes apply to "an action to determine the validity of [a local agency's] bonds, warrants, *contracts*, obligations or evidences of indebtedness." (Gov. Code, § 53511, subd. (a), italics added.) McGee argues the lease-leaseback agreements are not "contracts" as the term is used in Government Code section 53511. "California courts have read [Government Code] section 53511's reference to 'contracts' 'narrow[ly]' to reach only those contracts that 'are in the nature of, or directly relate[d] to a public agency's bonds, warrants or other evidences of indebtedness.' " (*Abercrombie, supra,* 240 Cal.App.4th at p. 309; see *Commerce Casino, supra,* 146 Cal.App.4th at p. 1429.) But contracts "involving financing and financial obligations" fall within this provision (*Friedland, supra,* 62 Cal.App.4th at p. 843), as do contracts that are " 'inextricably

bound up' " with bond funding and financing (*McLeod, supra,* 158 Cal.App.4th at p. 1169).

We previously held Education Code section 17406 authorizes lease-leaseback agreements without competitive bidding. (*McGee II, supra,* 247 Cal.App.4th at p. 242.) That provision has been characterized as providing a method of "financing school construction." (*Taber, supra,* 12 Cal.App.5th at p. 136 [noting Education Code section 17406 provided method for "financing school construction," but did not require school district to lack funds in order to enter lease-leaseback agreements].) As such, "the use of validation actions is a common practice for school construction projects structured as a lease-leaseback arrangement." (*Davis v. Fresno Unified School Dist.* (2015) 237 Cal.App.4th 261, 273, fn. 4 (*Davis*).) Here, the challenged lease-leaseback agreements were "funded through Torrance Unified School District General Obligation Bond Measure[s]." (See *McGee II, supra,* 247 Cal.App.4th at p. 240 ["The contracts were awarded to Balfour and were funded through a general obligation bond."].) Thus, the lease-leaseback agreements involved the District's financial obligations and were inextricably bound up in the District's bond financing, bringing them within the scope of "contracts" covered by Government Code section 53511.

Were there any doubt, McGee's own treatment of the lease-leaseback agreements throughout this litigation demonstrates they fall within Government Code section 53511. His operative complaints expressly alleged these cases were brought under section 863 as in rem actions to invalidate the lease-leaseback agreements. That includes his most recent lawsuit, which asserted *only* a conflict of interest claim and yet characterized the suit as an in rem proceeding and sought a declaration the lawsuit

10

was properly brought as a reverse validation action. McGee filed each complaint within the short 60-day statute of limitations for reverse validation actions. (§§ 860, 863.) He complied with the statutory procedure for service of a reverse validation action by publication. (§§ 861, 863.) Co-plaintiff California Taxpayers Action Network was not a party to the first complaint, but it filed an answer, alleging it had "an interest in the validity of the contracts." It could have only done so as an "interested party" subject to jurisdiction by publication of the summons according to the validation statutes. (§ 861; see *Friedland, supra,* 62 Cal.App.4th at p. 843.)

Beyond the pleadings, McGee previously argued in the trial court the lease-leaseback agreements were subject to validation. In opposing motions for judgment on the pleadings, he relied on *Davis* to take the position the lease-leaseback agreements "[a]re [s]ubject to [v]alidation" pursuant to Government Code section 53511 because they "are for the purpose of financing." He also distinguished *Abercrombie* because the court in that case held the challenged contracts were *not* subject to validation. (*Abercrombie, supra,* 240 Cal.App.4th at pp. 309–310.) McGee even went so far as to claim Balfour "cannot dispute lease leaseback contracts like the ones at issue here are subject to validation actions because [the defendants] have in prior motions requested the Court take judicial notice of scores of prior validation actions as evidence of the legality of their transaction. They can[]not have it both ways."

We also previously held McGee had standing to bring his conflict of interest claims in part because "this case involved a validation action in which the court had authority to set aside void contracts." (*McGee II, supra,* 247 Cal.App.4th at p. 248.)

11

Similarly, other recent appellate decisions evaluating lease-leaseback agreements arose in cases brought under the validation statutes. (See *Taber, supra,* 12 Cal.App.5th at p. 122; *Los Alamitos Unified School Dist. v. Howard Contracting, Inc.* (2014) 229 Cal.App.4th 1222, 1225; *Davis, supra,* 237 Cal.App.4th at p. 273, fn. 4.) We are satisfied the lease-leaseback agreements fall within Government Code section 53511, bringing them within the validation statutes.[3]

The centerpiece of McGee's appeal is his argument the conflict of interest claims were in personam taxpayer claims brought pursuant to section 526a falling outside the validation statutes.[4] Section 526a allows a taxpayer to bring "[a]n action to obtain a judgment restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a local agency . . . against any officer thereof, or any agent, or other person, acting in its behalf." (§ 526a, subd. (a).) "The purpose of section 526a 'is to permit a large body of persons to challenge wasteful government action that otherwise would go unchallenged because of the standing requirement.' [Citation.] 'The essence of a taxpayer action is an illegal or wasteful

---

[3] Balfour and the District invoke various legal doctrines to argue McGee is precluded from asserting this argument due to his prior positions in the trial court. We need not rely on those principles. McGee's previous treatment of the lease-leaseback agreements is proof enough to support the conclusion the agreements are, in fact, subject to the validation statutes.

[4] McGee argues the trial court had personal jurisdiction over Balfour and the District because they made general appearances. That aspect of personal jurisdiction over the parties is not disputed and is not at issue here.

expenditure of public funds or damage to public property.' " (*McLeod, supra,* 158 Cal.App.4th at p. 1165; see *Taber, supra,* 12 Cal.App.5th at p. 141.)

McGee contends he may use section 526a to assert conflict of interest claims pursuant to common law and Government Code section 1090. "[S]ection 526a is, as a general rule, available to taxpayers who wish to challenge government contracts affected by financial conflicts of interest," including pursuant to Government Code section 1090. (*San Diegans for Open Government v. Public Facilities Financing Authority of City of San Diego* (2019) 8 Cal.5th 733, 746 (*San Diegans*).)[5] Government Code section 1090 " ' "codifies the long-standing common law rule that barred public officials from being personally financially interested in the contracts they formed in their official capacities." [Citation.] Government Code "section

---

[5] McGee has withdrawn an argument he may independently assert a conflict of interest claim pursuant to Government Code section 1092, which permits "any party" to avoid a contract that violates Government Code section 1090. *San Diegans* held that section does not "create[] a private right of action for nonparties to sue to avoid public contracts." (*San Diegans, supra,* 8 Cal.5th at p. 746.) The District and Balfour go further to argue McGee also cannot pursue a section 526a taxpayer claim—which is permissible under *San Diegans*—because he distinguished a case in his opening appellate brief on the ground it "involved a CCP § 526a action not a GC § 1092 action as is the case here." His opening brief was filed before *San Diegans* was issued. In his reply brief, he argued he could bring his claim pursuant to section 526a. The District and Balfour filed supplemental briefs addressing *San Diegans*. Considered against this backdrop, we will not treat McGee's isolated comment as a bar to his reliance on section 526a.

1090 is concerned with ferreting out any financial conflicts of interest, other than remote or minimal ones, that might impair public officials from discharging their fiduciary duties with undivided loyalty and allegiance to the public entities they are obligated to serve. [Citation.] Where a prohibited interest is found, the affected contract is void from its inception [citation] and the official who engaged in its making is subject to a host of civil and (if the violation was willful) criminal penalties, including imprisonment and disqualification from holding public office in perpetuity [citations]." ' [Citation.] ' "[A] contract in which a public officer is interested is *void*, not merely voidable." ' " (*McGee II, supra,* 247 Cal.App.4th at p. 247.)

While in rem validation actions and in personam taxpayer actions are not mutually exclusive, section 526a taxpayer claims alleging violations of section 1090 may still fall within the validation statutes. (See *McLeod, supra,* 158 Cal.App.4th at p. 1167; *Regus v. City of Baldwin Park* (1977) 70 Cal.App.3d 968, 972.)[6] The form of the claim does not govern; we must examine " '[t]he gravamen of a complaint and the nature of the right sued upon," in order to determine whether his claims fall within the validation statutes. (*McLeod, supra,* at p. 1165; see *Committee for Responsible Planning v. City of Indian Wells* (1990) 225 Cal.App.3d 191, 198 [requiring consolidation under validation

---

**6** McGee argues he timely filed all his claims within the 60-day period required by the validation statutes. (*McLeod, supra,* at pp. 1166–1167 [Both in rem and in personam "actions may be brought to challenge governmental action if suit is filed within the 60-day limitations period for validation actions."].) Balfour does not dispute the issue, so it is not clear why McGee focuses on it. We need not address it.

statutes of all claims that "relate to the same fundamental issue: the validity of Indian Wells' actions"].) The ultimate question is whether the claim "go[es] beyond the determination of the validity of the challenged matter" or is merely a "request for invalidation . . . in other words." (*Katz v. Campbell Union High School Dist.* (2006) 144 Cal.App.4th 1024, 1034 (*Katz*).)

In *McLeod*, for example, a taxpayer brought a suit pursuant to section 526a to challenge aspects of a school district's measure authorizing the issuance of construction bonds. (*McLeod, supra,* 158 Cal.App.4th at p. 1160.) The taxpayer sought declaratory and injunctive relief, but did not plead a claim under the validation statutes. (*Id.* at p. 1163.) The suit was filed well beyond the 60-day statute of limitations for a validation claim, so the issue was whether the section 526a claim was subject to that limitations period or some longer period that would have made it timely. The court held the 60-day period for filing validation claims applied because the section 526a claim attacked a decision that was subject to the validation statutes. (*McLeod,* at pp. 1164–1165.) Recognizing section 526a claims and validation claims are not mutually exclusive, the court held the taxpayer action "directly challenged the validity of a planned bond issuance, and the lack of a prompt validating procedure would impair the District's ability to operate." (*McLeod,* at p. 1169.)

The court in *Katz* reached a similar conclusion. In that case, the taxpayer filed a complaint to invalidate a newly passed tax and alleged additional claims for a declaration defining a term in the new tax provision and for an injunction restraining imposition of the tax. (*Katz, supra,* 144 Cal.App.4th at p. 1029.) The publication of the summons was defective under the

15

validation statutes, and the court rejected the taxpayer's argument his declaratory and injunctive relief claims were not affected because they were not subject to validation. (*Id.* at p. 1033.) The taxpayer's complaint did "not seek relief unrelated to the parcel tax he claims is invalid." (*Id.* at p. 1034.) Instead, the declaratory relief claim requested the court define the term at issue so the tax was valid and the injunction sought to restrain levy of the tax, which was "merely a request for invalidation of the tax stated in other words." (*Ibid.*)

As in *McLeod* and *Katz*, regardless of how McGee characterizes his conflict of interest claims or the relief he seeks, the gravamen is the invalidity of the lease-leaseback agreements. McGee admits he seeks "a finding that the contracts were ultra vires, illegal, void, and unenforceable due to a conflict of interest." His complaints alleged as much. A judgment finding Balfour violated section 1090 would render the lease-leaseback agreements " 'void from [their] inception.' " (*McGee II, supra,* 247 Cal.App.4th at p. 247.) Although McGee focuses on the fact that he seeks disgorgement directly from Balfour, any judgment ordering disgorgement would *require* a finding the lease-leaseback agreements were void. In other words, the agreements would *necessarily* be invalidated.

A judgment in McGee's favor would also undermine the very purpose behind the validation statutes. A cloud has hung over the challenged projects for *years*, destroying any hope in prompt validation of the underlying lease-leaseback agreements. That delay is largely attributable to McGee, who strategically chose not to prevent the projects from moving forward. Beyond the specific projects here, a judgment in McGee's favor would threaten *future* projects with the prospect of lawsuits long after

16

completion.  That would undoubtedly inhibit the District's ability to obtain financing for them.  (See *Friedland, supra,* 62 Cal.App.4th at p. 843 ["A key objective of a validation action is to limit the extent to which delay due to litigation may impair a public agency's ability to operate financially."].)  " '[T]he essential difference between those actions which ought and those which ought not to come under [the validation statutes] [is] *the extent to which the lack of a prompt validating procedure will impair the public agency's ability to operate.*  The fact that litigation may be pending or forthcoming drastically affects the marketability of public bonds' " and likely would have " 'a chilling effect upon potential third party lenders, thus resulting in higher interest rates or even the total denial of credit.' " (*McLeod, supra,* 158 Cal.App.4th at pp. 1167–1168.)

Because his conflict of interest claims are subject to validation, McGee cannot obtain effective relief through disgorgement.  He cites *Thomson v. Call* (1985) 38 Cal.3d 633 (*Thomson*), but it is distinguishable.  That case involved a taxpayer challenge to a city's fully performed real estate transaction alleging a violation of Government Code section 1090. The court held the city could retain title to the land *and* recoup the purchase price from the councilman with the alleged conflict of interest.  (*Thomson, supra,* at pp. 646–647; see *San Diegans, supra,* 8 Cal.5th at p. 737 [citing *Thomson* to note penalty for violating Government Code section 1090 "is substantial:  The interested official must disgorge any profits earned, and may not recover any consideration paid, under the contract"].)  *Thomson* did not arise under the validation statutes, so the court did not address whether the disgorgement remedy remains available

17

when a Government Code section 1090 claim seeks to void a completed contract falling within the validation statutes.

We will follow the reasoning in *Wilson*. The court in that case noted the plaintiff sought relief similar to what McGee seeks here—a judgment the challenged actions were " 'invalid, illegal, void and of no effect' " and an order to direct the public agencies to "seek reimbursement 'for all monies illegally and improperly spent' " on the challenged project. (*Wilson, supra,* 191 Cal.App.4th at p. 1567.) McGee points out *Wilson* did not involve *direct* disgorgement from a private party like Balfour, but *Wilson* did not focus on the precise *form* of the claims or requested relief; it focused on the fact the challenged project had been completed. Because "[v]alidation actions are intended to settle promptly *all questions* about the validity of an agency's action," the completion of the project rendered the action moot. (*Id.* at pp. 1580–1581, italics added.)

The question McGee raises is whether the lease-leaseback agreements were infected by a conflict of interest. If so, the only way he can obtain the remedy of disgorgement is with a judgment declaring the lease-leaseback agreements were " 'void from [their] inception.' " (*McGee II, supra,* 247 Cal.App.4th at p. 247.) Because the agreements were subject to validation and he seeks to invalidate them, the completion of the challenged projects rendered his claims moot.[7]

---

[7] In light of our conclusion, we need not address McGee's argument the trial court abused its discretion by refusing to admit his stipulated exhibits. As the trial court noted, the only relevant fact was whether the projects had been finished, which was proved through testimony. For the same reason, we deny

18

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to costs on appeal.

**CERTIFIED FOR PUBLICATION**


BIGELOW, P. J.

WE CONCUR:


GRIMES, J.


STRATTON, J.

---

McGee's request for judicial notice as unnecessary to resolve the appeal.