[No. A059577. First Dist., Div. Five. Sept. 14, 1993.]

COUNTY OF SANTA CLARA et al., Plaintiffs and Appellants, v.
REDEVELOPMENT AGENCY OF THE CITY OF SAN JOSE et al.,
Defendants and Respondents.

COUNSEL

Lozano, Smith, Smith, Woliver & Behrens, David J. Wolfe, Cheri D. Love, Louis T. Lozano, Steven M. Woodside, County Counsel, William I. Anderson, Chief Deputy County Counsel, Kevin D. Allmand, Deputy County Counsel, Rutan & Tucker, Jeffrey M. Oderman and Dan Slater for Plaintiffs and Appellants.

Joan R. Gallo, City Attorney, George Rios, Assistant City Attorney, Joseph P. DiCiuccio and Glenn D. Schwarzbach, Deputy City Attorneys, for Defendants and Respondents.

McDonough, Holland & Allen, Joseph E. Coomes, Jr., and T. Brent Hawkins as Amici Curiae on behalf of Defendants and Respondents.

OPINION

KING, J.—

### I. INTRODUCTION

In this case we hold that the provisions of nine San Jose redevelopment plans do not prohibit indebtedness extending beyond the plans' expiration dates, and thus the projects may be financed with bonds which mature after those expiration dates.

The County of Santa Clara (County) and the Santa Clara Unified School District (District) filed separate lawsuits challenging the validity of a proposed $80 million bond issue by the Redevelopment Agency of the City of San Jose (Agency). The trial court consolidated the lawsuits, severed certain causes of action for breach of contract, and rendered summary judgment for the Agency on the other causes of action. In this appeal from the summary judgment, the County contends the proposed bond issue is invalid because it contravenes provisions in the underlying redevelopment plans that purportedly prohibit indebtedness extending beyond the expiration dates of the plans. The District contends the bond issue is invalid due to noncompliance with the California Environmental Quality Act (CEQA).

### II. BACKGROUND

This case involves 15 separate redevelopment projects in San Jose, which were commenced between 1968 and 1991 and have been merged for purposes of tax allocation. (Health & Saf. Code, § 33480 et seq.) Nine of the individual redevelopment plans authorize financing with property tax "increment" revenue, which because of the merger may be used to finance all fifteen projects.

Increment revenue, which is the primary source of funding for redevelopment projects, consists of the increased property tax revenue resulting from rises in the assessed valuation of property in a redevelopment project area. Taxing agencies continue to receive the amount of revenue they would have received under the assessed valuation existing at the time the project was approved, while the additional revenue attributable to the project is placed in a special fund of the redevelopment agency for repayment of indebtedness incurred in financing the project. (*Redevelopment Agency* v. *County of San Bernardino* (1978) 21 Cal.3d 255, 259 [145 Cal.Rptr. 886, 578 P.2d 133].) Increment financing is permitted, if a redevelopment plan authorizes it, by article XVI, section 16, of the California Constitution, and by Health and Safety Code section 33670.

The redevelopment plans for the nine San Jose projects that authorize receipt of increment revenue each contain a "Duration of Plan" provision setting forth dates between 1997 and 2015 for expiration of the plans. The duration provision typically states, in pertinent part, "The provisions of the Plan and the provisions of other documents formulated pursuant thereto shall be effective until [date], except for the nondiscrimination and non-segregation provisions which shall continue in perpetuity."

The nine plans also contain "Project Financing" provisions which typically state, in pertinent part, that taxes levied on property in the project areas "shall be divided and allocated to produce tax increments to the Agency as provided by" Health and Safety Code section 33670.

Each of the nine plans was amended in 1986 to add provisions addressing the matter of indebtedness incurred to finance the projects. The financing amendments, in pertinent part, provide for division and allocation of a maximum amount of revenue to the Agency pursuant to Health and Safety Code sections 33670 and 33333.4. The amendments further state, "Any loans, advances or indebtedness to finance this project in whole or in part shall be established before December 31, 2001, provided that the repayment of such loans, advances, or indebtedness may extend beyond this date. . . . [¶] These provisions shall supersede all existing provisions of this Plan respecting the same subject matter to the extent such provisions are in conflict with these set forth herein."[1]

On July 2, 1991, the San Jose City Council adopted a resolution authorizing the Agency to issue $80 million in 30-year tax allocation bonds to finance the merged projects, secured by a pledge of tax increment revenue. (Health & Saf. Code, § 33671.) The County filed a lawsuit challenging the validity of this decision (Code Civ. Proc., § 860 et seq.; Health & Saf. Code, § 33501), asserting three causes of action: the first two challenge the Agency's authority to collect increment revenue after expiration of the various plans, while the third asserts the issuance violates a prior agreement between the parties that the Agency will pay the County a portion of increment revenue from the merged projects. The Agency cross-complained against the County for breach of the prior agreement. The District filed a separate validation action and petition for administrative mandate (Code Civ. Proc., § 1094.5), later joined by two coplaintiffs, asserting three causes of action:

---

[1]The 1986 amendments were adopted pursuant to Health and Safety Code section 33333.4, which required amendments to existing redevelopment plans to include limitations on the amount of funds allocated to the redevelopment agency and time limits on the establishing of loans, advances, and indebtedness to finance the project. "Such loans, advances, or indebtedness may be repaid over a period of time longer than such time limit." (Health & Saf. Code, § 33333.2, subd. (2).)

the first two are identical to the County's first two causes of action, while the third asserts the issuance is invalid due to noncompliance with CEQA. Venue was later changed from Santa Clara County to San Mateo County.

The statutory scheme governing lawsuits to determine the validity of a public agency's action requires the court to consolidate all pending lawsuits brought to challenge a particular public agency decision. (Code Civ. Proc., § 865.) Here, the court consolidated the lawsuits by the County and the District but severed the causes of action for breach of contract. The court subsequently rendered summary judgment for the Agency on all but the severed breach of contract claims, which are still pending. The County and the District filed a timely notice of appeal from the summary judgment.

## III. Discussion

### A. *The Validity of Indebtedness Extending Beyond the Plans' Expiration Dates*

The County's primary contention on appeal, in which the District joins, is that the Agency's proposed bond issue is invalid because it contravenes the duration provisions of the individual plans, which the County claims prohibit indebtedness and the collection of increment revenue extending beyond the expiration dates of the plans. The County's reasoning, which presupposes the plans are unambiguous and raise no material fact issues, is as follows: the Community Redevelopment Law (Health & Saf. Code, § 33000 et seq.) does not impose time limits on the receipt of increment revenue but permits redevelopment plans to impose such limits, and the nine plans at issue here impose such limits through the duration provisions, which state that the plans "and the provisions of other documents formulated pursuant thereto" are effective until specified dates.

The problem with this argument is that the plans' *financing amendments* expressly permit indebtedness extending for an open-ended period beyond 2001: "Any loans, advances or indebtedness to finance this project in whole or in part shall be established before December 21, 2001, provided that the repayment of such loans, advances, or indebtedness *may extend beyond this date*." (Italics added.) The financing provisions and amendments provide for division and allocation of revenue to the Agency pursuant to Health and Safety Code section 33670, which entitles a redevelopment agency to receive increment revenue until the "loans, advances, and indebtedness, if any, and interest thereon, have been paid . . . ." (Health & Saf. Code, § 33670, subd. (b); see *Marek v. Napa Community Redevelopment Agency* (1988) 46 Cal.3d 1070, 1082 [251 Cal.Rptr. 778, 761 P.2d 701].) By allowing debt

with no time limit for repayment (other than imposed by the market as a practical matter) and incorporating the statutory prescription for receipt of increment revenue until debt is paid, the financing provisions and amendments impose no time limit on the Agency's receipt of increment revenue.

The County argues the financing amendments must be harmonized with the duration provisions to yield the conclusion that debt may extend beyond 2001 but not beyond the expiration dates of the plans. ██ A redevelopment plan is a creature of local legislation and is subject to ordinary rules of statutory construction (*County of Santa Cruz* v. *City of Watsonville* (1985) 177 Cal.App.3d 831, 840-843 [223 Cal.Rptr. 272]), and as a general rule the various parts of a legislative scheme must be harmonized (*Redevelopment Agency* v. *Arvey Corp.* (1992) 3 Cal.App.4th 1357, 1362 [5 Cal.Rptr.2d 161]). ██ But this rule is inapplicable here because the financing amendments contain a conflict clause which states that they "shall supersede all existing provisions of this Plan respecting the same subject matter to the extent such provisions are in conflict with these set forth herein." The conflict clause makes clear that the financing amendments were not intended to be harmonized with the duration provisions in the event of a conflict, but were intended to supersede the duration provisions. Accordingly, because the plans are clear and unambiguous with regard to the superseding effect of the open-ended financing amendments, this rule of statutory construction should not be indulged. (See *Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 800 [268 Cal.Rptr. 753, 789 P.2d 934].)[2]

The County also argues alternatively that its interpretation of the plans is supported by extrinsic evidence raising a material fact issue, consisting of the Agency's prior public representations indicating that the plan expiration dates limit the Agency's authority to collect increment revenue. Again, however, because the financing amendments to the plans clearly and unambiguously permit indebtedness and receipt of increment revenue without time limitation after 2001, it would be improper to resort to extrinsic evidence to reach a contrary construction of the plans. (*Ibid.*)[3]

We conclude the plans do not prohibit indebtedness and the collection of increment revenue extending beyond the plans' expiration dates, and thus we reject the County's challenge to the validity of the bond issue.

We also note that the challenged financing is not only permitted by the plans, but also makes sense as a practical matter. Redevelopment can take a

---

[2]Also, the County's reasoning is flawed as to one of the plans because it expires in 1997, so that its duration provision cannot be employed to impose a time limit on debt beyond 2001 as the County urges.

[3]In any event, most of the Agency representations asserted by the County occurred before the 1986 financing amendments and are therefore irrelevant.

long time, and the rises in assessed valuation that generate significant increment revenue may not commence until a substantial amount of redevelopment has occurred, perhaps many years into the project. (See *Marek* v. *Napa Community Redevelopment Agency, supra*, 46 Cal.3d at p. 1081, fn. 9.) Yet, as stated below by one of the Agency's experts in a declaration supporting the motion for summary judgment, redevelopment typically requires long-term financing, which "enables a public entity to finance capital projects by spreading the cost of that capital improvement out over time." The expert explained that redevelopment bonds usually have maturity dates of 30 years, allowing the redevelopment agency "to match the term of the financing with the useful life of the capital asset being financed, which is the most equitable way to use public tax revenues to acquire or build durable public assets." Because a pledge of increment revenue is essential to the issuance of redevelopment bonds (see Health & Saf. Code, § 33671), but there may not be significant increment revenue for many years, bond financing may not be possible until some years into the project. If the maturity dates of redevelopment bonds are limited to the expiration date of the plan, then the long-term financing essential to the project might not be possible, dooming the project entirely.

It is unfortunate that, in these times of economic recession and budgetary crisis, public entities such as the Agency, County and District must struggle for access to a seemingly ever-dwindling public fisc. It may well be, as the County claims, that the long-term diversion of increment revenue will have a significant negative impact on the County's ability to provide public services, the need for which is increased by redevelopment activity. But if redevelopment is to occur—and the Legislature has clearly determined it is desirable (Health & Saf. Code, § 33030)—then as a practical matter the long-term diversion of increment revenue through issuance of bonds maturing after the completion of redevelopment may be essential and inevitable.

B.  *The Denial of Discovery*

Next, the County contends the court erred when it denied a request for a continuance to allow further discovery of extrinsic evidence in aid of interpretation of the redevelopment plans. (Code Civ. Proc., § 437c, subd. (h).) Once again, because the plans are unambiguous, resort to extrinsic evidence would have been improper. (*Delaney* v. *Superior Court, supra*, 50 Cal.3d at p. 800.) The court properly denied the request.

C.  *The Propriety of Severance*

Finally, the County contends the court erred procedurally by severing the breach of contract causes of action and rendering summary judgment

on the remaining causes of action, because (1) the severance violated the rule that a trial court must decide all consolidated public agency validation actions by entry of a single judgment disposing of all issues as to all parties (*Committee for Responsible Planning* v. *City of Indian Wells* (1990) 225 Cal.App.3d 191, 198 [275 Cal.Rptr. 57]), and (2) the severed causes of action are not separate and independent (see *Day* v. *Papadakis* (1991) 231 Cal.App.3d 503, 509-512 [282 Cal.Rptr. 548]).

Because of the state of the record in this case, we are compelled to conclude that the single judgment rule for consolidated validation actions was not violated because the County's breach of contract claim is not a validation action. The County sought an injunction against issuance of the bonds based on the purported breach of contract, but in support of severance the Agency argued that the County's only remedy for breach of contract is an award of damages rather than invalidation of the decision to issue the bonds. The record is silent as to the reasoning underlying the trial court's decision to sever; thus we must presume the court accepted the Agency's argument and decided that injunctive relief is unavailable because damages are an adequate remedy. (See *Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193] [all presumptions indulged to support judgment on matters as to which record is silent]; 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 3, p. 681 [no right to equitable relief when there is an adequate remedy at law].) The lack of a reporter's transcript of the hearing on severance precludes the County from challenging the sufficiency of the evidence to support this implied ruling. (See *Sui* v. *Landi* (1985) 163 Cal.App.3d 383, 385-386 [209 Cal.Rptr. 449].) ■■ ■ ■ The consequence of the implied ruling is that the breach of contract claim cannot be characterized as a validation action; thus severance of the contract causes of action did not violate the single judgment rule.[4]

■■ The contract causes of action are separate and independent from the remaining claims, supporting severance, because the two sets of claims present wholly different issues. The contract issue is whether there was any violation of the prior agreement that the Agency would pay the County a portion of increment revenue. This question is completely unrelated to the

[4]Similarly, we conclude the summary judgment is appealable because it finally disposes of severed causes of action and postponement of review would cause serious hardship and inconvenience to the Agency (by leaving the bond issuance in limbo). (*Day* v. *Papadakis, supra*, 231 Cal.App.3d at pp. 508-512.) A judgment in a validation proceeding which does not dispose of all issues as to all parties is interlocutory and thus nonappealable. (*Committee for Responsible Planning* v. *City of Indian Wells, supra*, 225 Cal.App.3d at p. 95.) This rule is not invoked here, however, because the County's contract claim cannot be characterized as a validation action.

issues whether the bond issuance contravenes the duration provisions of the plans or is invalid due to noncompliance with CEQA. Severance is further supported by the fact the County's contract claim involves the calculation of monetary compensation, while the other issues do not. (*Garat* v. *City of Riverside* (1991) 2 Cal.App.4th 259, 276 [3 Cal.Rptr.2d 504].)

We conclude the severance does not violate the single judgment rule for validation actions and is appropriate because the severed causes of action are separate and independent.

### D. *Noncompliance With CEQA*

■ The District contends the proposed bond issuance is invalid because it violates CEQA in two respects: (1) there has been no preliminary review to determine if the issuance is subject to or exempt from CEQA, and (2) there has been no initial study, after a preliminary review, to determine if the issuance may have a significant effect on the environment, requiring an environmental impact report (EIR). (See Cal. Code Regs., tit. 14, § 15002, subd. (k).) The District claims the bond issuance could have a significant environmental effect in that the fiscal impact of the resulting diversion of increment revenue could cause physical deterioration and overcrowding of school facilities. (See *Citizens Assn. for Sensible Development of Bishop Area* v. *County of Inyo* (1985) 172 Cal.App.3d 151, 171 [217 Cal.Rptr. 893] [lead agency required to consider whether proposed shopping center would indirectly cause physical deterioration of downtown shopping area].)

The problem with this argument is that the bond issuance does not independently invoke the requirements of CEQA, but is subsumed in the redevelopment plans themselves, which complied with CEQA. "[A]ll public and private activities or undertakings pursuant to or in furtherance of a redevelopment plan shall be deemed a single project." (Pub. Resources Code, § 21090.) The Agency's proposed bond issuance is an activity or undertaking pursuant to or in furtherance of the underlying redevelopment plans, in that it finances the plans. Each of those plans was accompanied by an EIR at the time of its inception. (Health & Saf. Code, § 33352, subd. (i).) Consequently, the bond issuance complies with CEQA because the underlying redevelopment plans did so.

The District claims the issuance is not "in furtherance" of the redevelopment plans because their duration provisions prohibit the diversion of increment revenue beyond the plans' expiration dates. This claim is undermined by our conclusion that the plans' superseding financing amendments permit the diversion of increment revenue beyond the expiration dates.

The District argues, alternatively, that the bond issuance is a "substantial change" in the redevelopment plans or their underlying circumstances requiring a subsequent EIR. (Pub. Resources Code, § 21166.) But in light of the 1986 addition of the financing amendments to the plans, the bond issuance cannot reasonably be characterized as a substantial change. The financing amendments clearly contemplate indebtedness extending without time limit beyond 2001, and hence beyond the plans' expiration dates. The proposed bond issuance merely implements what was contemplated by the plans as amended in 1986. It may be true, as the District argues, that the Agency never considered the potential environmental impact of the bonds, but the District should have raised this point in 1986, when the financing amendments were added. Any substantial change in the plans or underlying circumstances occurred at that time, and any challenge to the validity of indebtedness extending beyond the plans' expiration dates based on failure to comply with CEQA in 1986 is precluded by the District's failure to file a validation action at that time. (See Code Civ. Proc., § 860 [60-day deadline for filing validation action].)

### IV.  DISPOSITION

The judgment is affirmed.

Peterson, P. J., and Haning, J., concurred.