Filed 11/25/15

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| GOLDEN GATE HILL DEVELOPMENT COMPANY, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF ALAMEDA, et al., <br><br> Defendants and Respondents. | A142500 <br><br> (Alameda County <br> Super. Ct. No. RG14713078) |

In a November 2009 election in the County of Alameda (County), voters approved Measures I and J (the Measures), levying special parcel taxes by the Albany Unified School District (District). Plaintiff and appellant Golden Gate Hill Development Company, Inc. (appellant) is the owner of a parcel of real property in the City of Albany subject to the tax. In February 2014, appellant filed the present lawsuit against the County and District (respondents) seeking a refund of taxes paid under the Measures.[1] The complaint alleges the tax rates in the Measures are improper because different rates are imposed on residential and nonresidential properties, as well as nonresidential properties of different sizes. The complaint references a recent decision in this district, *Borikas v. Alameda Unified School Dist.* (2013) 214 Cal.App.4th 135 (*Borikas*), which declared invalid a different parcel tax with similar rate classifications.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part IV.

[1] Appellant also named the Alameda County Assessor as a defendant. The trial court sustained the Assessor's demurrer to the complaint. That ruling is not challenged on appeal.

1

Respondents demurred, contending the complaint failed to state a claim because, under Code of Civil Procedure[2] section 860, et seq. (hereafter, the validation statutes), appellant was required to present its claims in a "reverse validation action" within 60 days of passage of the Measures.[3] The trial court sustained the demurrer without leave to amend. Because appellant has not shown there is a basis for its refund claim independent of the alleged invalidity of the Measures, we affirm.

BACKGROUND

The Measures were presented to voters in the District on November 3, 2009, and the Registrar of Voters certified passage of the Measures on November 10. The Measures each imposed different tax rates on residential and nonresidential properties, as well as different tax rates on nonresidential properties of different sizes. In particular, Measure I levied, for a period of five years, an annual $149 tax on each residential unit, and the greater of $149 or $.03 per square foot on each parcel of nonresidential property. Measure J combined (and extended) previously approved parcel taxes and levied an annual $555 tax on each residential unit, and the greater of $555 or $.11 per square foot on each parcel of nonresidential property.

Appellant owns parcel number 66-2760-10-7 on Pierce Street in the City of Albany (the Parcel). For fiscal years 2010-2011, 2011-2012, and 2012-2013, appellant received property tax statements for the Parcel including parcel taxes under the Measures totaling over $197,000. Appellant paid the assessments associated with the Measures.

The Measures each state: "Taxpayers seeking a refund of any tax paid shall follow the procedures applicable to property tax refunds pursuant to the California Revenue and Taxation Code." In July 2013, appellant presented to respondent County a claim for a refund pursuant to Revenue and Taxation Code section 5096, et seq. Revenue and

_____

[2] All undesignated statutory references are to the Code of Civil Procedure.
[3] A proceeding by which an "interested person" (§ 863) seeks to determine the validity of an act of a public agency within the scope of the validation statutes is referred to as a "reverse validation action." (*Kaatz v. City of Seaside* (2006) 143 Cal.App.4th 13, 30 & fn. 16 (*Kaatz*).)

2

Taxation Code section 5097, subdivision (a)(2), authorizes requests for refunds within four years of the date of payment.

In February 2014, appellant filed the present lawsuit. The complaint alleges the claim for a refund was deemed rejected due to respondent County's failure to act on the claim within six months. (Rev. & Tax. Code, § 5141.) It asserts a cause of action under Revenue and Taxation Code section 5140 seeking a partial refund of parcel taxes paid. The complaint alleges the Measures violate Government Code section 50079 as construed by *Borikas*, *supra*, 214 Cal.App.4th 135. In particular, because the Measures "are structured to impose different tax rates on residential versus nonresidential properties, as well as different tax rates on differently sized parcels of real property, and unequal rates are not proper, the Taxpayer is entitled to a refund of the difference and to be taxed equally with other taxpayers."

In March 2014, respondent District demurred to the complaint; respondent County joined in the demurrer. Respondents argued appellant could not state a claim for a refund because the validity of the Measures had not been challenged through a timely reverse validation action under section 860 et seq. In May 2014, the trial court sustained the demurrer without leave to amend. This appeal followed.

DISCUSSION

I.      *Standard of Review*

"A demurrer tests the legal sufficiency of the complaint . . . ." (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497.) In determining whether appellant properly stated a claim for relief, "our standard of review is clear: ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by

3

amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) Our review is de novo. (*Ibid.*)

II.     *The Validation Statutes*

"[S]ections 860 through 870 . . . provide an expedited process by which certain public agency actions may be determined valid and not subject to attack." (*Kaatz*, *supra*, 143 Cal.App.4th at p. 19; see generally *City of Ontario v. Superior Court* (1970) 2 Cal.3d 335, 340-342 (*City of Ontario*); *Kaatz*, at pp. 29–31.) The validation statutes apply to a matter when "any other law" authorizes their application, and the statutes provide for a 60-day period during which an action may be brought to "determine the validity of such matter." (§ 860; see also *Kaatz*, at p. 31.)[4] As relevant in the present case, Government Code section 50077.5, subdivision (a) provides that the validation statutes "appl[y] to any judicial action or proceeding to validate, attack, review, set aside, void, or annul an ordinance or resolution approved by the voters pursuant to this article on or after January 1, 1986, that levies a special tax . . . ." (See also *Katz v. Campbell Union High Sch. Dist.* (2006) 144 Cal.App.4th 1024, 1033 (*Katz*).) Appellant does not dispute that a challenge to the validity of the Measures is within the scope of Government Code section 50077.5, subdivision (a).

While section 860 authorizes a public agency to bring an action to validate matters to which the validation statutes apply, the public is also authorized to bring actions. Thus, section 863 provides that if the relevant public agency does not initiate validation proceedings, "any interested person may bring an action within the time and in the court specified by Section 860 of this chapter to determine the validity of such matter." (See

---

[4] Section 860 provides, "A public agency may upon the existence of any matter which under any other law is authorized to be determined pursuant to this chapter, and for 60 days thereafter, bring an action in the superior court of the county in which the principal office of the public agency is located to determine the validity of such matter. The action shall be in the nature of a proceeding in rem."

4

also *City of Ontario*, *supra*, 2 Cal.3d at p. 341; *Kaatz*, *supra*, 143 Cal.App.4th at p. 30.)[5] The 60-day period specified in section 860 applies to any such "reverse validation action." (*Kaatz*, at p. 30 & fn. 16; see also *City of Ontario*, at p. 341.)

If no action is brought within the 60-day timeframe, the public is "forever barred from contesting the validity of the agency's action in a court of law." (*City of Ontario*, *supra*, 2 Cal.3d at p. 341; see also *Kaatz*, *supra*, 143 Cal.App.4th at p. 30.)  Practically speaking, this means that "an agency may indirectly but effectively 'validate' its action by doing nothing to validate it; unless an 'interested person' brings an action of his own under section 863 within the 60-day period, the agency's action will become immune from attack whether it is legally valid or not." (*City of Ontario*, at pp. 341–342; see also *Kaatz*, at p. 19 ["The public agency may validate its action by either active or passive means.  It may initiate an action in rem to establish the validity of the matter.  (§ 860.) Alternatively, the agency may do nothing, and if no 'interested person' brings suit to determine the validity of the public agency's action within 60 days (§ 863), the action is deemed valid.  (§ 869.)"]; *Embarcadero Mun. Improvement Dist. v. County. of Santa Barbara* (2001) 88 Cal.App.4th 781, 792 (*Embarcadero*) ["We have found no authority supporting [a] . . . distinction between those cases where a validation judgment was entered and here, where the annexation was validated by doing nothing."].)  "As to matters 'which have been or which could have been adjudicated in a validation action,

---

[5] Section 863 provides, "If no proceedings have been brought by the public agency pursuant to this chapter, any interested person may bring an action within the time and in the court specified by Section 860 to determine the validity of such matter.  The public agency shall be a defendant and shall be served with the summons and complaint in the action in the manner provided by law for the service of a summons in a civil action.  In any such action the summons shall be in the form prescribed in Section 861.1 except that in addition to being directed to 'all persons interested in the matter of [specifying the matter],' it shall also be directed to the public agency.  If the interested person bringing such action fails to complete the publication and such other notice as may be prescribed by the court in accordance with Section 861 and to file proof thereof in the action within 60 days from the filing of his complaint, the action shall be forthwith dismissed on the motion of the public agency unless good cause for such failure is shown by the interested person."

such matters . . . must be raised within the statutory limitations period in section 860 et seq. or they are waived.' " (*California Commerce Casino, Inc. v. Schwarzenegger* (2007) 146 Cal.App.4th 1406, 1420 (*California Commerce*).)

"[T]he purpose of the validation statutes is to provide a simple and uniform method for testing the validity of government action." (*Moorpark Unified School Dist. v. Superior Court* (1990) 223 Cal.App.3d 954, 960.) " 'A validating proceeding differs from a traditional action challenging a public agency's decision because it is an in rem action whose effect is binding on the agency and on all other persons.' " (*Committee for Responsible Planning v. City of Indian Wells* (1990) 225 Cal.App.3d 191, 197.) " ' "[A] central theme in the validating procedures is speedy determination of the validity of the public agency's action." [Citation.] "The text . . . and cases which have interpreted the validation statutes have placed great importance on the need for a single dispositive final judgment." [Citation.] The validating statutes should be construed so as to uphold their purpose, i.e., "the acting agency's need to settle promptly all questions about the validity of its action." ' " (*California Commerce*, *supra*, 146 Cal.App.4th at pp. 1420–1421; see also *Katz*, *supra*, 144 Cal.App.4th at p. 1028; *Embarcadero*, *supra*, 88 Cal.App.4th at pp. 789–790.)

III.   *Appellant Has Not Shown It Can State a Claim for a Refund*

In the present case, appellant filed its refund action in February 2014, well after the period for challenging the validity of the Measures expired. In sustaining the demurrer without leave to amend, the trial court reasoned, "Although Plaintiff titles this claim as a refund of taxes, the underlying premise of this claim is that Plaintiff is entitled to a refund because the taxes assessed on Plaintiff's real property pursuant to [the Measures], violated Government Code section 50079, pursuant to the recent holding of [*Borikas*, *supra*, 214 Cal.App.4th 135]. In order for Plaintiff to recover on its claim, a finding would need to be made that the taxes charged by [the Measures] were illegal. As such, this court finds that Plaintiff's claim is in essence a 'reverse validation action' and therefore needed to be brought within 60 days of passage of [the Measures]."

Government Code section 50079 authorizes a school district to impose "qualified

6

special taxes," which means "special taxes that apply uniformly to all taxpayers or all real property within the school district," with certain exceptions. (See also *Borikas*, *supra*, 214 Cal.App.4th at p. 135.) As noted previously, the complaint in the present case references the decision in *Borikas*, in which a parcel tax approved by Alameda Unified School District voters was challenged in a validation action. (*Id.* at p. 141.) Similar to the Measures, the enactment imposed "different tax rates on residential and commercial/industrial properties, as well as different rates on different sized commercial/industrial properties." (*Id.* at p. 139.) *Borikas* held that Government Code section 50079 "does not authorize school districts to impose special taxes that classify and differentially tax property within the district" and severed the unauthorized provisions from the measure at issue in that case. (*Borikas*, at pp. 164, 168.)

Appellant admits that it could have challenged the validity of the Measures through a validation action and that the Measures were long ago deemed valid by operation of the validation statutes. Appellant states, "In this instance, a validation action could have been utilized to determine the validity of the Measures . . . ." Appellant also admits the time period for a validation action has passed and "the Measures are deemed to be validated." Nevertheless, appellant contends its claim is not barred, because it "only seeks return of a portion of the taxes it paid and only seeks to litigate the taxes it paid." We agree the difference in the relief sought (a refund rather than invalidation) means appellant's claim is not properly characterized as a reverse validation action. However, that distinction does not change the result, because appellant's claim for a refund is *based on* the alleged illegality of the tax scheme enacted by the Measures. (*Embarcadero*, *supra*, 88 Cal.App.4th at p. 789 ["The gravamen of a complaint and the nature of the right sued upon, rather than the form of the action or relief demanded, determine which statute of limitations applies."]; *Hills for Everyone v. Local Agency Formation Com.* (1980) 105 Cal.App.3d 461, 468 ["it is the nature of the governmental action being challenged rather than the basis for the challenge that determines the procedure to be utilized"]; accord *McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1165 (*McLeod*).) Appellant describes the grounds for its refund claim

7

as "that a portion of the tax improperly was erroneously or illegally collected and or illegally assessed or levied because it provided for a non-uniform and generally higher tax rate against the Taxpayer's property." Because the Measures are conclusively valid, appellant fails to state a claim for a refund.[6]

Appellant argues its position finds support in *City of Ontario*, *supra*, 2 Cal.3d 335. In that case, taxpayers challenged a city's plan for the financing of an automobile racing stadium that included the issuance and sale of mortgage bonds, the award of a contract to a private party for the construction of the stadium, and the lease of the stadium to a for-profit entity. (*Id.* at p. 338.) The plaintiffs claimed the plan promoted a private commercial enterprise without any public benefit and was an unconstitutional gift of public funds. (*Id.* at pp. 338–339.) The plaintiffs sought three forms of relief: an injunction to restrain, among other things, further expenditure of public funds; restitution to the city of all money paid out for unlawful purposes; and a declaration that the stadium scheme was invalid. (*Id.* at p. 339.) The city moved to dismiss the complaint on the ground the plaintiffs failed to comply with certain requirements of the validation statutes. (*Id.* at p. 339.) The trial court denied the motion, impliedly finding the plaintiffs' claims were governed by the validation statutes but expressly holding the plaintiffs had shown good cause to excuse their failure to comply with certain requirements in the statutes relating to publication of summons. (*Ibid.*)

The California Supreme Court denied the city's request for a writ of prohibition. (*City of Ontario*, *supra*, 2 Cal.3d at p. 348.) The Court discussed the "humble beginnings" of the validation statutes in 1961 and expressed concern that the enactment of Government Code provisions applying the statutes to, among other things, government contracts, had caused the statutes to "grow[] far beyond the scope originally conceived by

---

[6] In its reply brief, appellant asserts vaguely that "if Appellant's case is remanded for a determination on the merits, Appellant will have to prove" the taxes at issue were "illegal at the time they were collected, assessed, or levied." Appellant does not, however, explain how it can make that showing if the Measures are deemed valid, and fails to demonstrate how its complaint could be amended to state a claim for a refund on a basis other than the invalidity of the Measures.

8

the [Judicial] Council," which had first proposed enactment of the validation statutes. (*City of Ontario*, at pp. 340–341.) The Court expressed doubt that the validation statutes applied "[t]o the extent plaintiffs ask for injunctive relief unrelated to the performance of the terms of the" stadium agreement, or to the extent the restitution claim "goes beyond the terms of the" agreement. (*Id.* at pp. 344–345.) The Court ultimately concluded "the question whether [the validation statutes] appl[y] to the case at bar presents a 'complex and debatable' issue" and, therefore, "a mistaken but reasonable decision by plaintiffs' counsel that [they] did not apply constitute[d] good cause for the trial court to permit belated compliance with [their] terms." (*Id.* at pp. 345–346; see also *In re Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 825–827.)

Appellant asserts *City of Ontario* "distinguished claims against an entire government action (in this instance, that would be the Measures) and individual actions to recover monetary amounts." Appellant is mistaken. To the extent *City of Ontario* expressed skepticism that the validation statutes precluded all of the plaintiffs' claims (see *In re Quantification Settlement Agreement Cases*, *supra*, 201 Cal.App.4th at p. 827), it was because the injunction and restitution claims "involved matters that went beyond the validity of the challenged speedway agreement itself." (*Katz*, *supra*, 144 Cal.App.4th at pp. 1033–1034 [distinguishing *City of Ontario*]; see also *Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 848 (*Friedland*).) Appellant has not shown its claim for a refund involves a matter beyond the validity of the Measures themselves.[7] Neither

---

[7] The other case appellant cites on this point, *County of Santa Clara v. Redevelopment Agency* (1993) 18 Cal.App.4th 1008, is also distinguishable. There, a county and a school district challenged a redevelopment agency's proposed bond issuance. (*Id.* at p. 1011.) The trial court severed the county's contract claim relating to a prior agreement with the agency from claims regarding the validity of the bond issuance. (*Id.* at p. 1016.) The court of appeal affirmed because "[t]he contract causes of action are separate and independent from the remaining claims . . . . The contract issue is whether there was any violation of the prior agreement that the Agency would pay the County a portion of increment revenue. This question is completely unrelated to the issues whether the bond issuance contravenes the duration provisions of the plans or is invalid due to noncompliance with CEQA." (*Id.* at pp. 1016–1017.) The court stated that the "breach of contract claim is not a validation action," because monetary recovery was the only

9

has appellant shown that its claim the Measures impose an illegal tax could not have been adjudicated in a validation action. (See *Friedland*, at pp. 846–847 [trial court properly sustained demurrer without leave to amend where the plaintiffs' constitutional claim could have been adjudicated in a prior validation action].)

Appellant also contends it is entitled to pursue its refund claim based on the language in the Measures requiring that "[t]axpayers seeking a refund of any tax paid shall follow the procedures applicable to property tax refunds pursuant to the California Revenue and Taxation Code." Appellant contends its refund claim is proper under Revenue and Taxation Code section 5096, subdivisions (b) and (c), which provide for the refund of taxes "[e]rroneously or illegally collected" or "[i]llegally assessed or levied."[8] Appellant argues its refund claim is timely because Revenue and Taxation Code section 5097 requires that a refund claim be presented within four years of a payment, and Revenue and Taxation Code section 5141 provides for a six-month period for filing a refund action after the relevant governmental entity's denial of a claim for a refund.

Although the Measures mandate use of the Revenue and Taxation Code procedures for refund claims, and although appellant's refund claim appears to be timely under the Revenue and Taxation Code, appellant's claim lacks any *legal basis*, because the Measures were long ago deemed valid by operation of the validation statutes.

---

remedy for the breach. (*Id.* at p. 1016.) It appears the court reasoned the county's contract claim was outside the scope of the validation statutes because the claim was based on breach of the prior contract rather than the invalidity of the bond issuance itself. That is, if the county's claim was correct it did not mean that the issuance was be illegal, but, rather, that the county was due money for breach of the prior agreement. In contrast, in the present case appellant's claim is based on a contention the Measures are illegal.

[8] Revenue and Taxation Code section 5096 provides: "Any taxes paid before or after delinquency shall be refunded if they were: [¶](a) Paid more than once. [¶](b) Erroneously or illegally collected. [¶](c) Illegally assessed or levied. [¶](d) Paid on an assessment in excess of the ratio of assessed value to the full value of the property . . . [¶](e) Paid on an assessment of improvements when the improvements did not exist on the lien date. [¶](f) Paid on an assessment in excess of the value of the property as determined . . . by the county assessment appeals board. [¶] (g) Paid on an assessment in excess of the value of the property as determined by the assessor . . . ."

10

Although the Measures specify the procedure for *refund* claims, nothing in the Measures specifies a *validation* procedure different from that proscribed by the validation statutes.[9] Contrary to appellant's assertions, application of the Revenue and Taxation Code procedures to claims for refunds is consistent with the trial court's conclusion that the validation statutes preclude the *basis* for appellant's claims. In the language of Revenue and Taxation Code section 5096, subdivisions (b) and (c), the taxes for which appellant seeks a refund were not "[e]rroneously or illegally collected" or "[i]llegally assessed or levied," because the Measures had been deemed valid. On the other hand, taxpayers like appellant remain free to present claims for refunds not based on the validity of the Measures themselves, such as claims based on errors in implementation of the Measures or based on other matters specified in Revenue and Taxation Code section 5096. (See *Embarcadero*, *supra*, 88 Cal.App.4th at p. 792 ["Those cases where the courts have permitted lawsuits brought beyond the 60–day period alleged illegal implementation of a validated action [citations] or municipal contracts not subject to the validating statutes [citation]."].) Thus, the refund procedure in the Measures is not, contrary to appellant's assertions, rendered "meaningless or extraneous" by a conclusion that the validation statutes preclude a refund claim based on the validity of the Measures.[10]

---

[9] Appellant quotes *State Bd. of Equalization v. Superior Court* (1985) 39 Cal.3d 633, 638, for the proposition that, under the California Constitution, "the sole legal avenue for resolving tax disputes is a postpayment refund action. A taxpayer may not go into court and obtain adjudication of the validity of a tax which is due but not yet paid." However, that statement was in reference to a challenge to an actual tax assessment levied on a taxpayer; appellant elsewhere admits the legality of the Measures could have been challenged in a timely validation action. The other case cited by appellant on this point, *Flying Dutchman Park, Inc. v. City & County. of San Francisco* (2001) 93 Cal.App.4th 1129, 1135, also involved a "tax deficiency determined to be due and owing" and did not address whether the validation statutes applied to the tax at issue.

[10] Nothing in our opinion should be construed to prohibit a taxpayer from seeking a tax refund where the validity of the relevant enactment was timely and successfully challenged by a different taxpayer. In that instance, the tax levied under the invalidated enactment would not have been legal at the time of the assessment.

IV.     *Appellant Has Not Shown A Violation of Due Process*

Finally, appellant argues that denial of its tax refund claim would violate its right to due process under the federal constitution.[11]  Appellant has not shown a violation of due process.

Appellant relies on *Reich v. Collins* (1994) 513 U.S. 106 (*Reich*), where the United States Supreme Court reviewed a decision of the Georgia Supreme Court affirming dismissal of a taxpayer's claim seeking a refund of income taxes the State of Georgia had collected pursuant to a statutory scheme that subsequently had been held unconstitutional.  (*Id.* at pp. 108–109.)  The Georgia Supreme Court held that Georgia's tax-refund statute, which authorized refunds of " 'erroneously or illegally assessed and collected' " taxes, did not apply when a taxpayer sought a refund of taxes collected pursuant to a statute that was later held unconstitutional.  (*Id.* at p. 109.)  The United States Supreme Court reversed.  The Court reaffirmed states have the "flexibility" to provide a remedy for taxes collected in violation of federal law either "before the disputed taxes are paid (predeprivation), after they are paid (postdeprivation), or both."  (*Id.* at p. 108; see also *id.* at pp. 110–111.)  However, a state may not do what Georgia did, "hold[ing] out what plainly appears to be a 'clear and certain' postdeprivation remedy and then declar[ing], only after the disputed taxes have been paid, that no such remedy exists."  (*Id.* at p. 108; see also *id*. at p. 111; accord *Newsweek v. Florida Dept. of Revenue* (1998) 522 U.S. 442, 444–445.)

*Reich*, which makes no reference to any applicable Georgia law akin to the validation statutes, is distinguishable.  As explained previously and as appellant concedes, the Measures were validated as a matter of law when they were not challenged within the statutory timeframe.  Accordingly, the taxes were not "[e]rroneously or illegally collected" or "[i]llegally assessed or levied" within the meaning of section 5096,

---

[11] Appellant failed to present this contention in opposing respondents' demurrer, but we exercise our discretion to consider the issue on appeal.  (*In re Marriage of Moschetta* (1994) 25 Cal.App.4th 1218, 1227.)  However, we address only the very limited citations and arguments presented by appellant.

12

subdivisions (b) and (c) of the Revenue and Taxation Code. Thus, unlike the situation in *Reich*, appellant was *not* denied the refund remedy specified in the Measures. Appellant *may* seek a refund for illegally assessed taxes, but the taxes enacted by the Measures were *not* illegal due to the operation of the validation statutes. Moreover, the present situation is not like *Reich*, where predeprivation procedures were inadequate to satisfy due process, because "no reasonable taxpayer would have thought that they represented, in light of the apparent applicability of the refund statute, the exclusive remedy for unlawful taxes." (*Reich*, *supra*, 513 U.S. at p. 111.) In contrast, a reasonable taxpayer would have recognized the need to timely challenge the Measures, in order to prevent validation of the Measures by operation of the validation statutes.

## DISPOSITION

The trial court's judgment is affirmed. Costs on appeal are awarded to respondents.

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

BRUINIERS, J.

(A142500)

Superior Court of Alameda County, No. RG14713078, Hon. John M. True, Judge.

Greenberg Traurig, Bradley R. Marsh, William J. Goines and Karen Rosenthal, for Plaintiff and Appellant.

Reed Smith, Mardiros H. Dakessian, Mike Shaikh, Jenny Choi and John R. Messenger, for California Taxpayers Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Donna R. Ziegler, County Counsel, John T. Seyman and Farand C. Kan, Deputy County Counsel, for Defendant and Respondent County of Alameda.

Atkinson, Andelson, Loya, Ruud & Romo, David A. Soldani and Lisa R. Allred, Defendant and Respondent Albany Unified School District.

Lozano Smith, Jeffery L. Kuhn, Sloan R. Simmons, and Daniel M. Maruccia; California School Boards Association's Education Legal Alliance, Keith J. Bray and Joshua R. Daniels, for California School Boards Association's Education Legal Alliance as Amicus Curiae on behalf of Defendant and Respondent Albany Unified School District.