Filed 3/9/21

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| COACHELLA VALLEY WATER DISTRICT et al., <br><br>     Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF RIVERSIDE COUNTY, <br><br>     Respondent; <br><br> RANDALL C. ROBERTS, <br><br>     Real Party in Interest. | E074010 <br><br> (Super.Ct.No. RIC1825310) <br><br> OPINION |

ORIGINAL PROCEEDINGS; petition for writ of mandate from an order of the Superior Court of Riverside County. Irma Poole Asberry, Judge. Petition granted.

Colantuono, Highsmith & Whatley, Michael G. Colantuono, Pamela K. Graham, Liliane M. Wyckoff, for Petitioners.

Costell & Adelson Law Corporation, Jeffrey Lee Costell, Joshua S. Stambaugh, Sara M. McDuffie, and Timothy J. Burke, for Real Party in Interest.

1

Aleshire & Wynder, Anthony R. Taylor, Christine M. Carson, William G. Ash, as Amicus Curiae on behalf of State Water Contractors.

In this writ proceeding we must answer a single question: Do the validation statutes (Code Civ. Proc., §§ 860-870.5) apply to a county water district's ad valorem property tax such that a challenge to the tax must be brought within the 60-day statute of limitations in Code of Civil Procedure section 860? As we'll explain, the answer is yes.

The tax at issue in this case relates to the State Water Project (or SWP)—California's vast system of storage and conveyance facilities designed to provide water to its millions of residents and farmers. (See *San Diego County Water Authority v. Metropolitan Water Dist. of Southern California* (2017) 12 Cal.App.5th 1124, 1132-1133 (*San Diego*).) In 2013, the Coachella Valley Water District (the water district) passed a resolution adopting a two-cent increase to the rate of its ad valorem property tax, which the water district levies annually to satisfy its contractual financial obligations to the SWP (the SWP tax).

In 2018, Randall Roberts filed a lawsuit against the water district and the County of Riverside, seeking to invalidate the tax under the Burns-Porter Act of 1960 (Wat. Code, §§ 12930-12944) and the California Constitution (Propositions 13, 26, and 218) and to obtain a refund.[1] The water district demurred, arguing the entire action was time-barred because Roberts was required under the validation statutes to present his claims in a "reverse validation action" no later than 60 days after the water district adopts the tax,

[1] Though the County of Riverside is also a defendant and petitioner in this proceeding, for simplicity we refer only to the water district.

which it does annually by resolution. (Code Civ. Proc., §§ 806, 863.) The trial court concluded the validation statutes do not apply to the SWP tax and overruled the demurrer.[2]

The water district now seeks a writ of mandate ordering the trial court to reverse its decision and sustain the demurrer. It argues the validation statutes apply to the SWP tax by operation of the County Water District Law (Wat. Code, § 30000 et seq.), which makes the validation statutes applicable to any action to determine the validity of a county water district's "assessment" (*id.*, § 30066) and defines a property tax as an "assessment" (*id.*, § 31702.3). We agree and therefore grant the petition.

# I

# FACTS

A.    *The Water District and the State Water Project*

The water district is a public agency and local water district which was formed and operates under the County Water District Law and the Coachella District Merger Law. (Wat. Code, § 33100.) The water district provides water to over 100,000 customers in the Coachella Valley, including Roberts who lives in the district. As a local water district, it has the power to set water rates and levy taxes on property within the district to satisfy its debts and expenses. (Wat. Code, §§ 31007, 31701, 31702.) And, like 28 other local water districts across the state, it is an "SWP contractor," meaning it has a water supply contract with the Department of Water Resources (DWR) for SWP water. (See California

---

[2] The court sustained the demurrer without leave to amend as to one cause of action, Roberts' claim for an injunction, which we discuss below.

3

Department of Water Resources (2020) ["The SWP delivers water to 29 water contractors in the state"] at <https://water.ca.gov/What-We-Do/Water-Storage-And-Supply> [as of Mar. 8, 2021].)

The State Water Project, which DWR owns and operates, is a complex water storage and supply system that transports water from Northern to Southern California, over 700 miles. (California Department of Water Resources, *supra*, at <https://water.ca.gov/What-We-Do/Water-Storage-And-Supply> [as of Mar. 8, 2021].) It consists of a network of dams, canals, and pumping plants that "'stretch from Lake Oroville in Butte County to Lake Perris in Riverside County.'" (*San Diego*, *supra*, 12 Cal.App.5th at p. 1132.) Water conveyed through the SWP comes from various sources but reaches Southern California through the California Aqueduct, which itself is over 400 miles long. (*Id.* at pp. 1133-1134.)

The SWP is financed in part by state bonds issued under the Burns-Porter Act (or the Act). (*Goodman v. County of Riverside* (1983) 140 Cal.App.3d 900, 903 (*Goodman*).) California voters approved the Burns-Porter Act in 1960 to establish a financing system for, and authorize DWR to construct and operate, the State Water Resources Development System (the System), which consists of various water facilities and includes the SWP. (Wat. Code, § 12931; see also *Warne v. Harkness* (1963) 60 Cal.2d 579, 582-583.) Under the Act, bondholders lent DWR millions in funds to construct the SWP on a promise of repayment. That repayment was secured by revenue from public agencies with taxing authority, in exchange for allowing those agencies to participate in the State

4

Water Project (thus creating the SWP contractors). (Wat. Code, § 12937, subd. (b).) Our Supreme Court validated this funding scheme in 1963. (*Metropolitan Water Dist. v. Marquardt* (1963) 59 Cal.2d 159, 179-202.)

As relevant here, the Burns-Porter Act directed DWR "to enter into contracts for the sale, delivery or use of water or power, or for other services and facilities made available by the State Water Resources Development System." (*Goodman*, *supra*, 140 Cal.App.3d at p. 903, citing Wat. Code, § 12937, subd. (b).) The water supply contracts between DWR and the 29 SWP contractors are substantively identical and "require regular payments [from the local governmental entities] to the state in return for participation in the System." (*Goodman*, at p. 904.) "The payments under these contracts pay for project operating costs and the public bonds issued to build the system." (*San Diego*, *supra*, 12 Cal.App.5th at p. 1133.)

Article 34 of the water supply contracts provides: "If in any year the District fails or is unable to raise sufficient funds by other means, the governing body of the District *shall levy upon all property* in the District not exempt from taxation, *a tax or assessment sufficient to provide for all payments under this contract then due or to become due within that year*." (*Goodman*, *supra*, 140 Cal.App.3d at p. 905, italics added.) "Not all the districts [contracting with DWR] actually receive water, but all must make payments according to their respective maximum annual water entitlements and the portion of the System required to deliver such entitlements." (*Id*. at pp. 903-904.) The water district is one such district, as the SWP is unable to deliver water to the Coachella Valley. "Those

5

[districts] which actually receive water also pay amounts attributable to the water received." (*Ibid*.)

In *Goodman*, the court upheld local water districts' right to levy property taxes to fund their obligations under their water supply contracts. The court concluded such taxes were exempt from Proposition 13's one percent cap on property taxes imposed without first obtaining voter approval because, by approving the Burns-Porter Act in 1960, "the voters necessarily approved the use of local property taxes whenever the boards of directors of the agencies determined such use to be necessary to fund their water contract obligations." (*Goodman*, *supra*, 140 Cal.App.3d at pp. 909-910; see also Cal. Const., art. XIII A, § 1, subd. (a) [Prop. 13 1% limit].)

The water district entered into its water supply contract with DWR in 1963. Its contract contains the language in Article 34 quoted above. However, because the SWP lacks the means to deliver water directly to the Coachella Valley, the water district (like at least one other similarly situated public agency) has entered into a separate exchange agreement with the Metropolitan Water District of Southern California (MWD) to exchange its entitlement to SWP water for Colorado River water because MWD's canals can carry Colorado River water to the Coachella Valley. (See *San Diego*, *supra*, 12 Cal.App.5th at p. 1136 [San Diego County Water Authority entered into an exchange agreement with MWD in 2003].) In other words, the water district is one of the districts that doesn't receive SWP water but makes payments to DWR under Article 34 of the water supply contract to secure its maximum annual water entitlement.

6

B.      *The SWP Tax*

To satisfy its contractual obligation to DWR, the water district levies an ad valorem property tax on all properties in the district ("ad valorem" meaning the tax is imposed at a set percentage rate of each taxed property's assessed value). The tax is not part of, but imposed in addition to, the one percent tax the County of Riverside levies for all taxing local governments under Proposition 13. (Cal. Const., art. XIII A, § 1, subd. (a).) Following the procedures set out in the County Water District Law, each year, the water district's board of directors adopts a resolution certifying to the County Auditor the property tax rate necessary to fund its SWP obligations in the coming year. (Wat. Code, § 31701.) The county's board of supervisors then levies the tax and certifies the rate to the county auditor, who enters it in "the county assessment roll." (Wat. Code, § 31702.4.) The county treasurer-tax collector includes the tax on property bills, collects the tax, and disburses the proceeds to the water district following the annual April and December tax payment dates. (Wat. Code, § 31706.)

In 2013, the water district adopted Resolution No. 2013-34 to impose the SWP tax for that year at an increased rate (from $0.08 per $100 of assessed property value to $0.10). The water district has not increased the tax rate since then; each subsequent year the rate has been $0.10 per $100 of assessed property value.

C.    *Roberts' Lawsuit*

On November 30, 2018, Roberts filed this action—a petition for writ of mandate and complaint for injunctive relief, declaratory relief, and tax refund styled as a class action ("the complaint").[3] Roberts' complaint alleges the SWP tax is invalid because it's not actually a tax to satisfy SWP obligations—rather, a portion of the revenues are earmarked and spent on groundwater replenishment. Specifically, Roberts' complaint seeks "to stop [the water district's] continued practice of imposing and collecting improper charges under the guise of property taxes purportedly authorized by the 1960 Burns-Porter Act." He alleges the water district's board of directors is "controlled by large agricultural interests" and is unlawfully funneling the proceeds of the SWP tax to "fund replenishment of the underground aquifer that has been depleted by large agricultural companies over the past century so that those same agricultural water users can avoid paying their fair share of the replenishment costs."

Roberts also alleges the SWP tax violates the Burns-Porter Act's mandate that a water district levy only those taxes which are *necessary* to pay for SWP costs. Roberts argues the Act does not give the water district "*carte blanche* taxing power, and it d[oes] not authorize the use of property tax dollars to fund replenishment of the Coachella Valley's underground aquifer or to subsidize agricultural water use." He also alleges the SWP tax violates Proposition 13 because it is not being used to fund SWP expenses and has not been approved by the voters for the purposes for which it is being used (namely,

---

[3] The operative pleading is the first amended petition for writ of mandate and complaint, which Roberts filed on May 15, 2019.

8

aquifer replenishment). Finally, he alleges the tax violates the constitutional requirements that property-related fees and charges must be in proportion to the cost of the service provided (Cal. Const., art. XIII D, § 6, subd. (b)(3), and assessments on real property must be proportionate to the special benefit conferred (*id.*, § 4, subd. (a) (Proposition 218)).

Roberts' complaint focuses on the water district's two-cent increase to the SWP tax rate. He alleges: "[I]n approximately 2013, [the water district] unlawfully raised [the tax] even though its own records showed that it had at least $75 million in [State Water Project] Reserves and that [the water district's] staff recommended that the [tax] increase was unnecessary. Plaintiff is further informed and believes that [the water district] Board Members voted to significantly increase the purported [tax] in any event. Accordingly, on March 12, 2013, [the water district] adopted Resolution No. 2013-34 to increase [the] ad valorem [tax] from a rate of $0.08 to $0.10 per hundred dollars of assessed property valuation. That same day, [the water district] also adopted Resolution No. 2013-34 in order to apply the new revenue generated from this tax increase to benefit the 'Lower Whitewater Recharge Fund.' . . . As a result, agricultural property owners benefit to the detriment of all other property tax payers who are forced to subsidize agricultural water use and shoulder the burden of replenishing the Coachella Valley's aquifer."

The complaint asserts four causes of action. The first seeks a writ of mandate (Code Civ. Proc., § 1085) directing the water district to, among other things: stop collecting and enforcing the tax; issue a refund to Roberts and the other class members

9

for money collected from the tax; and to comply with what Roberts alleges is the water district's "mandatory duty" to "perform an annual analysis and make a reasonable determination regarding whether sufficient funds may be raised to pay for [the water district's] contractual SWP obligations by other means . . . before imposing and/or increasing the SWP taxes. The second cause of action seeks an injunction prohibiting the water district from "enforcing, collecting, using or diverting [the tax]" in an illegal manner. The third seeks declaratory relief in the form of a judgment identifying the parties' rights and duties with regard to the tax. And the fourth cause of action, a taxpayer claim of public waste (Code Civ. Proc., § 526a), seeks an order restraining the water district from "using or diverting" revenues from the tax for purposes other than satisfying its SWP obligations.

D.    *The Demurrer*

The water district demurred to the complaint, arguing, among other things, that Roberts failed to follow the validation procedures in Code of Civil Procedure sections 860 through 863, which include commencing the suit within 60 days of the challenged public agency act.[4] It argued that although Roberts had not identified which specific act or acts he was challenging, the focus of his complaint is the legality of its SWP tax and each resolution it passes levying the tax is subject to validation under Water Code sections 30066 and 31702.3. Thus, if Roberts were challenging the only act he did cite in

---

[4] The water district raised several other grounds for dismissing Roberts' lawsuit, but we do not recount them here because we agree the action is time-barred.

10

his complaint—the 2013 resolution to increase the SWP tax rate by two cents—that act was immunized by the validation statutes years ago.

On June 25, 2019, before the hearing on the demurrer, the water district passed a resolution setting the SWP tax for the upcoming 2019-2020 fiscal year. On August 23, 2019, Roberts filed a timely reverse validation action challenging that tax.

Following the hearing on the demurrer, the court rejected the validation argument. It concluded, without reference to or discussion of Water Code sections 30066 or 31702.3, that "there is no statute authorizing a validation proceeding challenging this tax." Presumably referring to a continuing accrual theory for the statute of limitations, the court further concluded that Roberts' challenge was not untimely because the water district's taxes "are authorized and collected annually." The court overruled the demurrer as to all claims except the second cause of action for an injunction, which it dismissed without leave to amend on the ground Roberts had failed to exhaust the administrative remedies necessary to seek a tax refund.

## II

## ANALYSIS

A.    *Necessity of Writ Relief*

Under Code of Civil Procedure section 1086, a court must issue a writ of mandate "in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." "Such a situation arises where the trial court has improperly overruled a demurrer. In that instance, the appellate court may direct the trial court to sustain the

11

demurrer by writ of mandate." (*Fair Employment & Housing Com. v. Superior Court* (2004) 115 Cal.App.4th 629, 633; *Fogarty v. Superior Court* (1981) 117 Cal.App.3d 316, 320-321; *Babb v. Superior Court* (1971) 3 Cal.3d 841.) This is because "there is no direct appeal from a trial court's adverse ruling, and the aggrieved party would be compelled to go through a trial and appeal from a final judgment." (*Fair Employment & Housing Com.*, at p. 633.) Additionally, "[d]*iscretionary* writ review of an order overruling a demurrer is appropriate where the issue is a matter of public importance and requires immediate resolution." (See, e.g., *San Bernardino Associated Governments v. Superior Court* (2006) 135 Cal.App.4th 1106, 1113 (*San Bernardino Associated Governments*), italics added [exercising discretion to review overruling of a demurrer in a lawsuit challenging local agency's tax measure].)

The circumstances of this case support both mandatory and discretionary writ relief. Writ review is necessary because the trial court improperly overruled the demurrer based on a purely legal error, a misinterpretation of the relevant validation statutes. (See *Hilmer v. Superior Court* (1934) 220 Cal. 71, 73 ["Although it is well established that mandamus cannot be issued to control a court's *discretion*, . . . the writ will lie where, under the facts, that discretion can be exercised *in only one way*].) But even if that weren't the case, we would nevertheless exercise our discretion to review the court's ruling because it involves an issue of public importance that requires immediate resolution. Here, just as in *San Bernardino Associated Governments*, the underlying lawsuit challenges a local tax measure intended to raise funds to pay for matters "of

12

considerable and obvious benefit to the public." (*San Bernardino Associated Governments*, *supra*, 135 Cal.App.4th at p. 1113.) In that case, revenues from the challenged tax measure were earmarked to improve roadways and access to public transportation. (*Ibid.*) The tax at issue here levies funds to satisfy the water district's financial obligations to DWR, thereby ensuring its maximum annual SWP water entitlement. And, as the State Water Contractors point out in their amicus brief, the payments SWP contractors make under Article 34 of their water supply contracts ensure DWR can continue to operate the SWP and pay its debt to the bondholders.[5] That assurance, in turn, makes low-cost financing available to the SWP contractors. The SWP is a vital means of water supply, delivery, and conservation. (*San Diego*, *supra*, 12 Cal.App.5th at p. 1133.) Any litigation with the potential to impair its funding undoubtedly raises an issue of public importance.

---

[5] The State Water Contractors is a non-profit organization that represents (and is composed of) the following 27 of California's 29 SWP contractors: Alameda County Flood Control & Water Conservation District ("Zone 7 Water Agency"), Alameda County Water District, Antelope Valley-East Kern Water Agency, Central Coast Water Authority, City of Yuba, Coachella Valley Water District, County of Kings, Crestline-Lake Arrowhead Water Agency, Desert Water Agency, Dudley Ridge Water District, Empire Westside Irrigation District, Kern County Water Agency, Littlerock Creek Irrigation District, Metropolitan Water District of Southern California, Mojave Water Agency, Napa County Flood Control & Water Conservation District, Oak Flat Water District, Palmdale Water District, San Bernardino Valley Municipal Water District, San Gabriel Valley Municipal Water District, San Gorgonio Pass Water Agency, San Luis Obispo County Flood Control & Water Conservation District, Santa Clara Valley Water District, Santa Clarita Valley Water Agency, Solano County Water Agency, Tulare Lake Basin Water Storage District, Ventura County Watershed Protection District.

B.     *The Validation Statutes Apply to the SWP Tax*

1.     *Standard of review*

"When reviewing by writ petition a ruling sustaining a demurrer, '[w]here a pure question of law is at issue . . . the appellate court reviews the issue de novo.'" (*San Bernardino Associated Governments*, *supra*, 135 Cal.App.4th at pp. 1113-1114.) Such is the case here. The issue we face—whether the validation statutes apply to the water district's SWP tax—requires us to interpret provisions in the Water Code and the Code of Civil Procedure and thus poses a pure question of law. (*Santa Clarita Organization for Planning & the Environment v. Abercrombie* (2015) 240 Cal.App.4th 300, 307 (*Abercrombie*) [appellate court independently reviews whether validation statutes apply to a particular agency act]; see also *McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1164 (*McLeod*) ["The determination of the statute of limitations applicable to a cause of action is a question of law we review independently"].)

2.     *The validation statutes*

"The Code of Civil Procedure provides, in sections 860 to 870, a set of accelerated in rem procedures for determining the validity of certain bonds, assessments and other agreements entered into by public agencies." (*Planning & Conservation League v. Department of Water Resources* (1998) 17 Cal.4th 264, 266 (*Planning & Conservation League I*) [validation action brought to challenge DWR's amendment of its water supply contracts with various local water agencies].) Commonly called the validation statutes, they allow a public agency to file an action to promptly determine the validity of any of

14

the agency's acts that fall within the scope of their provisions. (Code Civ. Proc., § 860.) They also allow any "interested person" to bring an action challenging the validity of such acts. (*Id.*, § 863.) Those suits are sometimes referred to as "reverse" or "inverse" validation actions. (*Kaatz v. City of Seaside* (2006) 143 Cal.App.4th 13, 30, fn. 16 (*Kaatz*); *Abercrombie*, *supra*, 240 Cal.App.4th at p. 308.)

"If the validation statutes apply, the validation (or inverse validation) complaint must be filed within 60 days of the act to be challenged (Code Civ. Proc., §§ 860 [validation claims or actions], 863 [inverse validation claims or actions]); notice of the claim must be served on 'all interested parties . . . by publication' (*id.*, § 861); the claim or action must be given preference over other civil actions (*id.*, § 867); any appeal of the trial court's ruling must be noticed within 30 days of the notice of entry of judgment (*id.*, § 870, subd. (b)); and the judgment, if not appealed or once affirmed on appeal, is 'forever binding and conclusive . . . against the agency and against all other persons' (*id.*, § 870, subd. (a))." (*Abercrombie*, *supra*, 240 Cal.App.4th at p. 308.)

Importantly, if the agency does nothing, and no interested person brings a reverse validation action within 60 days, the action is deemed valid and "become[s] immune from attack." (*Kaatz*, *supra*, 143 Cal.App.4th at p. 30; *California Commerce Casino, Inc. v. Schwarzenegger* (2007) 146 Cal.App.4th 1406, 1420 (*Commerce Casino*) ["[u]nder the statutory scheme, 'an agency may indirectly but effectively 'validate' its action *by doing nothing to validate it*'"].) As a result, all matters "which have been or which *could have been* adjudicated in a validation action, . . . including constitutional challenges," must be

15

"raised within the statutory limitations period in section 860 et seq. *or they are waived*." (*Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 846-847 (*Friedland*), italics added.)

"A validating proceeding differs from a traditional action challenging a public agency's decision because it is an in rem action whose effect is binding on the agency *and on all other persons*.'" (*McLeod*, *supra*, 158 Cal.App.4th at p. 1166, italics added.) "Validation actions are 'forever binding and conclusive.'" (*Ibid.*, quoting Code Civ. Proc., § 870.)

Although the statute of limitations for a validation action may seem "extremely short," our courts have concluded the 60-day period is reasonable given the important purposes of the validation statutes, which include "the need to limit the extent to which delay due to litigation may impair a public agency's ability to operate financially." (E.g., *Commerce Casino*, *supra*, 146 Cal.App.4th at pp. 1420-1421 [observing that "[w]hat constitutes a reasonable time is a question ordinarily left to the Legislature" and noting that a 60-day limitations period is not unique to the validation statutes]; *Friedland*, *supra*, 62 Cal.App.4th at p. 846 [same].)

3.      *Application*

Determining whether the validation statutes apply to a particular agency action is an exercise in cross-referencing. This is because the validation statutes do not specify the matters to which they apply; rather, their procedures apply to "any matter which *under any other law* is authorized to be determined pursuant to this chapter." (Code Civ. Proc.,

16

§ 860; *Planning & Conservation League I*, *supra*, 17 Cal.4th at pp. 268-269, italics added.) "Thus, we look to other statutes to determine the scope of public agency actions that are subject to validation under the validation statutes." (*Kaatz*, *supra*, 143 Cal.App.4th at p. 31.)

There's no shortage of cases analyzing whether the validation statutes apply to particular agency actions. (See, e.g., *Golden Gate Hill Development Co., Inc. v. County of Alameda* (2015) 242 Cal.App.4th 760 (*Golden Gate*) [validation statutes apply to voter-approved resolutions authorizing local school districts to levy special parcel taxes such that any challenge to the parcel taxes must be brought within 60 days of any such resolution]; *Regus v. City of Baldwin Park* (1977) 70 Cal.App.3d 968, 972 [validation statutes apply to municipal redevelopment projects such that taxpayer action alleging illegal diversion of municipal funds to finance a redevelopment project must be brought within 60 days of the ordinance approving the project]; *Meaney v. Sacramento Housing & Redevelopment Agency* (1993) 13 Cal.App.4th 566 [validation statutes applied to lawsuit challenging a county's funding agreement with a redevelopment agency for construction of a courthouse].) But the specific question we face here is an issue of first impression. No California court has been asked to determine whether the validation statutes apply to a local water district's annual property tax. That's not to say the answer can't readily be found in our statutory law. The water district argues that two provisions of the County Water District Law make clear the validation statutes apply to the tax at issue here: Water Code sections 30066 and 31702.3. We agree.

17

Sections 30066 and 31702.3 are part of Division 12 of the Water Code, known as the County Water District Law. (Wat. Code, § 30000 et seq.) That law authorizes county water districts to set water rates and charges, as well as to levy and collect taxes on "property within the district" if, "in the judgment of the board of directors" the water district's revenue is inadequate to satisfy its bonded debt or expenses. (Wat. Code, §§ 31007, 31701, 31702; unlabeled statutory citations refer to this code.)

Section 31701 governs how a water district determines whether a property tax is necessary in any given year, and section 31702.1 authorizes the board to set a rate of taxation through resolution. "The board may, by resolution, elect to fix its own rates of taxation, in which event it shall file certified copies thereof with the auditor, the assessor and the clerk of the board of supervisors of the county in which it is situated, on or before July 1. It shall thereafter continue to fix its own rate of taxation until it has filed with such officers certified copies of a resolution electing to the contrary." (§ 31702.1.)

If a water district resolves to levy a property tax, the county auditor must provide the district with "a written statement showing the total value of all taxable property in the district," which the district must "use[] . . . for taxation for that year." (§ 31702.2.) The district then fixes the tax rate based on the auditor's property statement and certifies the rate to the auditor. "On or before September 1 of each year, the board shall fix the rates of taxation in not to exceed four decimals, which it shall require for each of its purposes for said year, making due allowance for delinquency as fixed by law or by the board, and immediately certify said rates to the county auditor." (§ 31702.3.) Section 31702.3 further

18

provides: "These acts by the board are a valid *assessment of the property* and a valid levy of the taxes so fixed." (*Ibid.*, italics added.) Finally, section 30066 provides: "An action to determine the validity of an assessment, or of warrants, contracts, obligations, or evidences of indebtedness pursuant to this division [i.e., Division 12, the County Water District Law] may be brought pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure."

By their plain terms, sections 30066 and 31702.3 bring a local water district's act of setting a property tax, like the one at issue here, within the scope of the validation statutes. Roberts argues this isn't so because the word "tax" does not appear in section 30066. Such a narrow focus ignores the County Water District Law's overarching tax scheme and the obvious interplay of sections 30066 and 31702.3. Section 30066 makes the validation procedures applicable to any county water district "assessment," and section 31702.3 defines what an assessment is in this context—setting a tax rate based on the value of property within the district. The tax at issue here is clearly such an "assessment." The water district sets the tax following the procedures described above, and the tax is based off of the values of property within the district. (§§ 31700-31702.4.)

Having concluded the validation statutes apply to the SWP tax, we now consider whether Roberts' claims "could have" been brought in validation. If that answer is yes, then he waived the claims because when validation is permitted, it's the exclusive means to seek judicial review of government action. (See *Friedland*, *supra*, 62 Cal.App.4th at pp. 846-847 [all claims that "*could have been* adjudicated in a validation action" must be

19

"raised within the statutory limitations period in [Code Civ. Proc., §] 860 et seq. or they are waived"] italics added.)

It's undisputed that many of Roberts' allegations challenge the validity of the tax itself. The complaint seeks "to stop [the water district's] continued practice of *imposing and collecting* improper charges under the guise of property taxes purportedly authorized by the 1960 Burns-Porter Act." (Italics added.) The complaint alleges the tax violates both statutory and constitutional law and seeks a refund and a writ of mandate vacating "all decisions, acts, ordinances and/or resolutions unlawfully *imposing, authorizing, extending, increasing*, diverting or transferring the SWP Taxes." (Italics added.) These claims are undeniably aimed at the validity of the tax and the water district's ability to impose it, and as such they are governed by the validation statutes' 60-day limitations period.

However, Roberts argues that while those claims might be time-barred because they directly challenge the *imposition* of the tax, his taxpayer claim challenging the water district's act of *spending* some of the tax revenues on groundwater replenishment falls outside the scope of the validation statutes. Roberts contends he is entitled to pursue his taxpayer claim under Code of Civil Procedure section 526a regardless of whether the validation statutes apply to the SWP tax.[6] He points to *Davis v. Fresno Unified School*

---

[6] Code of Civil Procedure section 526a authorizes a taxpayer to bring an action "to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a local agency." (See also *Regus v. City of Baldwin Park*, *supra*, 70 Cal.App.3d at p. 971 [taxpayer action seeks "to enjoin illegal municipal expenditures"].)

20

*Dist.* (2020) 57 Cal.App.5th 911 (*Davis*), where the plaintiff brought a hybrid or "dual nature" lawsuit containing both a reverse validation and a taxpayer claim, and the appellate court concluded the latter was unaffected by the fact the validation claim had become moot. (*Id.* at pp. 935, 937.) But *Davis* does not help Roberts. Unlike Roberts, the plaintiff in the *Davis* case filed his hybrid lawsuit within 60 days of the act he was challenging. (*Id.* at pp. 918, 921, 942.) *Davis* stands only for the proposition that a plaintiff may pursue a taxpayer action *in addition to* a reverse validation action, that the application of the validation statutes to a particular government act does not deprive a plaintiff of the in personam relief of disgorgement available under Code of Civil Procedure section 526a. (*Davis*, at p. 917.) The case does not speak to the question of which statute of limitations applies to the taxpayer claim in such circumstances.

That issue was settled long before *Davis*. "A validation action under Code of Civil Procedure sections 860 et seq., and a taxpayer's action under Code of Civil Procedure section 526a are not mutually exclusive. [Citation.] Both actions may be brought [together] . . . *if suit is filed within the 60-day period prescribed for the validation action*." (*Regus v. City of Baldwin Park*, *supra*, 70 Cal.App.3d at p. 972; see also e.g., *City of Ontario v. Superior Court* (1970) 2 Cal.3d 335 (*Ontario*) [same]; *McLeod*, *supra*, 158 Cal.App.4th 1156 [same].) "'The *gravamen* of a complaint and the nature of the right sued upon, rather than the form of the action or relief demanded, determine which statute of limitations applies.'" (*McLeod*, at p. 1165, italics added, quoting *Embarcadero Mun. Improvement Dist. v. County of Santa Barbara* (2001) 88 Cal.App.4th 781, 789.) In this

21

case, the crux of Roberts' lawsuit—including his taxpayer claim—is a challenge to the validity of the SWP tax.

*Golden Gate* is instructive. There, the plaintiff brought a suit seeking a refund of a school district's special parcel taxes under Revenue and Taxation Code sections 5096 and 5140 on the ground the taxes were illegal for imposing different rates on residential and nonresidential properties. (*Golden Gate*, *supra*, 242 Cal.App.4th at p. 763.) Like here, the Legislature had enacted a statutory provision bringing the taxes within the scope of the validation statutes. Also like here, the plaintiff argued the 60-day statute of limitations did not apply to its refund claim because the claim did not seek to *invalidate* the tax. The court rejected this argument, explaining that because the refund claim was based on the plaintiff's allegation "that a portion of the tax improperly was erroneously or illegally collected and or illegally assessed or levied," the gravamen or essence of the claim was a dispute over "the validity of the [taxes] themselves." (*Golden Gate*, at pp. 768, 770.) As such, the plaintiff could not show that its refund claim "could not have been adjudicated in a validation action." (*Id.* at p. 770.) Put differently, the plaintiff had "fail[ed] to state a claim for refund" because the taxes were "conclusively valid" after surviving the 60-day period without challenge. (*Id.* at pp. 768-769.)

Similarly here, Roberts' taxpayer claim is based on his allegation that the SWP tax (or at least the portion of the tax purportedly used to fund groundwater replenishment) is invalid. His complaint alleges that the same day the water district adopted the 2013 resolution imposing the tax, it also adopted a resolution earmarking "the new revenue

22

generated from [the two-cent] increase to benefit the 'Lower Whitewater Recharge Fund.'" Roberts' imposition and spending challenges are two sides of the same coin. He alleges *the tax* is invalid because it's being imposed to raise money for an improper (i.e., non-SWP) purpose, and he alleges the water district's *spending* is illegal because it is not diverting all of the revenues towards its SWP obligations.

Under the relevant statutory framework, Roberts' spending allegations are inseparable from his allegations that the tax is invalid: the water district is statutorily required to disclose the amount of money it needs to raise through property taxes, as well as the source of the debt or expense, months before it adopts a resolution to levy the tax. (§ 31701.) Because Roberts' taxpayer waste claim alleges the SWP tax was imposed to raise funds for (at least partially) improper purposes, the claim is "inextricably intertwined with" the validity of the tax and is therefore governed by the statute of limitations in Code of Civil Procedure section 860. (See *Commerce Casino*, *supra*, 146 Cal.App.4th at p. 1430 [plaintiffs' challenge to gaming compacts between the Governor and five tribes was governed by the validation action statutes, and thus subject to the 60-day limitations period, because the compacts were "inextricably intertwined with the state's intended use of the income stream created by them and with the bonds to be issued at a later date"].)[7]

---

[7] At oral argument, Roberts asked us to grant him leave to amend his complaint to make it clearer that his taxpayer claim challenges the water district's spending only, not the imposition or validity of the tax. But his complaint already makes clear he is challenging how the water district spends the SWP tax revenues. Amending will not help Roberts because he cannot change the underlying nature of the claim, only how it is

*[footnote continued on next page]*

Next, relying on *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809 (*Howard Jarvis*), Roberts argues that applying the validation statutes to the SWP tax would immunize the water district from liability by validating ongoing illegality. According to Roberts, "[t]he consequences [of applying the validation statutes to the SWP tax] would be a system that sanctions a 'catch me if you can' scenario whereby governmental agencies can divert illegal tax funds, hide the true nature of their actions, and, if they can evade detection for sixty days, the illegal tax is beyond challenge." He argues that, like the court in *Howard Jarvis*, we should apply a "continuous accrual" theory to the statute of limitations, allowing the validity of a tax to be challenged within the statutory period "after *any collection* of the tax, regardless of whether [60 days have elapsed] since the tax measure was adopted." (*Howard Jarvis*, at pp. 824-825, italics added.)

Roberts' concern is misplaced. As we've seen, the water district cannot hide how it intends to spend the revenue generated by the SWP tax; it's required to make that information publicly available. (§ 31701.) And, according to Roberts' own allegations and supporting exhibits, the water district does so. On the same day it imposed the two-

_____

worded. (See *McLeod*, *supra*, 158 Cal.App.4th at p. 1168 ["the applicability of the 60-day limitations period of [Code Civ. Proc.,] § 860 depends on the nature of the action rather than its label"].) To be clear, Roberts is free to bring a timely taxpayer claim to enjoin improper spending alongside a timely claim seeking to invalidate the SWP tax. (E.g., *Regus v. City of Baldwin Park*, *supra*, 70 Cal.App.3d at p. 972.) Our holding is simply that, because the gravamen of both claims is the validity of the tax, they are both governed by the validation statutes' 60-day limitations period.

cent increase, it adopted a resolution publicly declaring its decision to use the additional revenue to fund groundwater replenishment.

Nor is there any merit to Roberts' argument that imposing the 60-day statute of limitations in this setting will immunize the water district's future tax rates from judicial scrutiny. The water district must fix the SWP tax rate anew each year (§ 31702.3), thereby creating a new "assessment" the validity of which may be determined under the validation statutes (§ 30066). (See *San Diego*, *supra*, 12 Cal.App.5th at pp. 1142-1143 [each annual resolution MWD adopts setting that year's water rates is subject to judicial review].) Indeed, Roberts has filed a timely reverse validation action against the SWP tax rate the water district fixed for the 2019-2020 fiscal year.[8]

In any event, *Howard Jarvis* has no application here. In that case, a taxpayer challenged a city's general tax on the ground the city had failed to obtain the required voter approval to adopt the tax measure. (*Howard Jarvis*, *supra*, 25 Cal.4th at p. 812.) The city argued the lawsuit was time-barred because the plaintiff had waited too long after its adoption of the tax measure to bring the challenge. The court disagreed and concluded the limitations period accrued anew each time the city *collected* the tax. (*Id.* at p. 825.)

Significantly, the general tax at issue in *Howard Jarvis* was not subject to the validation statutes. It was imposed under Government Code section 53723 and was subject to the three-year statute of limitations in section 338 of the Code of Civil

---

[8] At oral argument, the parties informed us that Roberts has also filed a reverse validation action challenging the SWP tax for the 2020-2021 fiscal year.

25

Procedure. (*Howard Jarvis*, *supra*, 25 Cal.4th at p. 825 ["We are not concerned in this case with bond issues or other governmental actions that, by state law, are made subject to the accelerated validation procedures of Code of Civil Procedure sections 860-870.5"].) In addition, the court's justification for applying the continuing accrual to the plaintiff's voter approval claim was that Government Code section 53723 not only required voter approval to *adopt* the tax measure, it also imposed a separate and ongoing obligation on the city not to *collect* a tax enacted without voter approval. (*Howard Jarvis*, at pp. 823-824.) The statutory authority for the SWP tax does not impose a similar ongoing obligation. Just like the water rates at issue in *San Diego*, water district property taxes like the one at issue here are "subject to attack" when enacted, "*even if they are essentially the same as previous ones for which the statute of limitations has expired.*" (*San Diego*, *supra*, 12 Cal.App.5th at p. 1142, italics added.)

The water district cannot evade judicial review, as Roberts worries. Although the claims in his 2018 complaint are time-barred, he may challenge (and indeed already has) future resolutions adopting the SWP tax by bringing a validation action within 60 days of the resolutions setting those taxes. (See *Fontana Redevelopment Agency v. Torres* (2007) 153 Cal.App.4th 902, 913 [the running of the 60-day limitations period bars a later challenge to the matter validated but does not preclude a challenge to *subsequent* conduct subject to the validation statutes].)

Finally, we reject Roberts' argument that even if the validation statutes do apply, we should follow *Ontario* and excuse his failure to comply with the statute of limitations.

*Ontario* does not provide authority for excusing a late complaint, because it involved the summons requirement in Code of Civil Procedure section 863, a separate and distinct provision which requires any interested person bringing a reverse validation action to publish a summons in the newspaper "within 60 days from the filing of his complaint" and establishes a mechanism for dismissing the complaint for failure to comply with the requirement. "[T]he action shall be forthwith dismissed on the motion of the public agency *unless good cause for such failure is shown* by the interested person." (Code Civ. Proc., § 863, italics added.) Thus, in *Ontario* it was the summons that was untimely, not the complaint, and the court found there was reason to justify the failure under the "good cause" provision of Code of Civil Procedure section 863. (*Ontario*, *supra*, 2 Cal.3d at p. 346.)

The validation statutes do not provide a similar "good cause" exception to the statute of limitations. And, even if they did, *Ontario's* reason for finding good cause is absent here. In *Ontario*, the question whether the validation statutes applied to the challenged public act was "'complex and debatable,'" and the court ultimately left it unanswered. (*Ontario*, *supra*, 2 Cal.3d at p. 345.) In this case, the relevant Water Code provisions are clear: a county water district makes an "assessment" when it fixes a property tax rate for any given year, and such assessments are subject to validation. (§§ 30066, 31702.3.)

In view of our conclusion that Roberts' complaint is barred by the 60-day statute of limitations applicable to validation proceedings, it is unnecessary to address the water

27

district's additional claims of trial court error. We also express no opinion as to the merits of the reverse validation actions presently before the trial court.

## III

## DISPOSITION

We grant the petition and direct the trial court to sustain the demurrer and dismiss the complaint in its entirety. Roberts shall bear costs on appeal.

CERTIFIED FOR PUBLICATION

SLOUGH
J.

We concur:

McKINSTER
          Acting P. J.

RAPHAEL
          J.